# Richmond

SUSIE B. BLACKWELL, ADMINISTRATRIX V. HUB FURNITURE CORPORATION.

November 15, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Timberlake & Nelson* and *J. Wesley Taylor,* for the plaintiff in error.

*Joseph I. Nachman* and *John D. White,* for the defendant in error.

EPES, J., delivered the opinion of the court.

This is an action, instituted by notice of motion for judgment, brought by Susie B. Blackwell, administratrix of J. D. Blackwell, deceased, against Hub Furniture Corporation, and Virginia Public Service Company, a corporation, to recover against the defendants for separate and distinct acts of negligence, which the plaintiff alleges acted concurrently and conjointly proximately caused the death of J. D. Blackwell. The jury returned a verdict for $5,700 in favor of the plaintiff against both. On motion of the defendants the court set aside the verdict and entered judgment in their favor.

The plaintiff petitioned for a writ of error against both defendants. This court granted a writ of error and super-

sedeas as to Hub Furniture Corporation, but refused a writ of error as to the Virginia Public Service Company.

Briefly the facts are as follows:

Mr. C. H. Crafton owns a small farm which is situate about three miles from Staunton. On this farm, not far from Crafton's residence, are two tenant houses. One of these was occupied by the Furrs, and will be designated as the "Furr" house. The other is known as the "Wash" house. These houses are situate on opposite sides of an alley or roadway. The distance from the one to the other is about sixty-two feet.

Along this roadway the Virginia Public Service has constructed and maintains a 2,300 volt electric line, consisting of two insulated wires strung on cross-arms affixed to poles, the wires being placed about three and one-half feet apart. There is evidence sufficient to support a verdict finding that the cross-arms were affixed to the poles about sixteen feet above the ground, but that at the point here involved the wires sagged so that at the lowest point they were only between ten and twelve feet above the ground. The nearest of these wires was twenty-three feet from the Furr house, and the other was thirty-five and one-half feet from the Wash house.

Some months prior to October 14, 1931, the Furrs had purchased a radio receiving set from the Hub Furniture Company, Incorporated, through E. M. Leadley, who installed the set and an aerial therefor. The Hub Furniture Corporation admits that Leadley was its agent in selling the radio set, but contends that in erecting the aerial he was not acting as its agent or servant. The court is of opinion that the evidence is sufficient to support a verdict finding that Leadley was acting as the agent or servant of that corporation both in selling the radio set and installing the aerial therefor; and for the purpose of this case that must be accepted as a fact proven.

In installing the aerial Leadley attached it to the Furr house at a height of nineteen feet four inches above the ground, passed it across and above the 2,300 volt electric

wires of the Virginia Public Service Company, and attached the other end of it to the corner of the roof of the Wash house, which is about fifteen feet, eight inches above the ground. The aerial wire was an uninsulated strand of copper wires twisted together.

On October 14, 1931, J. G. Blackwell was working as a farm laborer in the orchard of Mr. Crafton, which is a short distance from the Furr house. The Furrs were preparing to move to another place, and Mrs. Furr asked Mrs. Crafton to let Blackwell take down the aerial wire for her. Mrs. Crafton sent out to the orchard and asked Blackwell to go to the Furr house and take down the aerial for Mrs. Furr. Blackwell went to the Furr house and undertook to take down the aerial wire. He got up on the Wash house and detached that end of it, letting it drop down, so that it rested upon the 2,300 volt wires. He then went across the roadway to the Furr house, placed a ladder against it, went up the ladder to the roof of the house (which is a metallic roof) and undertook to detach that end of the aerial. While doing so he was electrocuted by an electric current passing from the 2,300 volt wires along the aerial, which had come into contact with 2,300 volt wires at a place at which the insulation had worn off.

The trial court was of opinion that the evidence showed conclusively that Leadley was guilty of negligence in stringing this aerial across and above the 2,300 volt wires, but was of opinion that it also showed, as a matter of law, that Blackwell was guilty of contributory negligence in undertaking to take it down; and it was upon this ground that it set aside the verdict against the Hub Furniture Company, Incorporated.

The evidence shows that Blackwell was a farm laborer; that he could read and write; that he had worked for several years for a man who had electric lights in his barn; that he had also worked in warehouses which, presumably, were lighted by electricity; that he had enough mechanical turn to operate and had operated farm machinery, including a tractor and an automobile; and that for

a while he had worked in a garage. In the vicinity of the Crafton farm many of the farm houses are lighted by electricity and electricity is used for power purposes in a number of them. It is also a matter of common knowledge that electricity is a dangerous instrumentality, and the court must assume that in a general way Blackwell knew this. But this court is of opinion that it cannot be said, as a matter of law, that these facts are sufficient to charge Blackwell with such knowledge of the danger he incurred in undertaking to take down this aerial in this manner as to make what he did negligence; and that, therefore, the court erred in setting aside the verdict against the Hub Furniture Corporation.

The judgment of the trial court will be reversed, the verdict of the jury reinstated against the Hub Furniture Corporation, and judgment here entered for the plaintiff against Hub Furniture Corporation with interest at six per centum per annum from January 25, 1933, until paid.

*Reversed, and final judgment*
*entered for plaintiff in error.*