Rosa L. STANCIL, Administratrix of the Estate of George Ben Stancil, deceased, Appellant,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff, Appellee.

No. 7821.

United States Court of Appeals Fourth Circuit.

Argued March 20, 1959.

Decided May 26, 1959.

Jerrold G. Weinberg, Norfolk, Va. (Fine, Fine, Legum, Weinberg & Schwan, Norfolk, Va., on brief), for appellant.

W. F. Powers, Jr., Asst. U. S. Atty., Norfolk, Va. (John M. Hollis, U. S. Atty., Norfolk, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and BOREMAN and STANLEY, District Judges.

SOBELOFF, Chief Judge.

An action against the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b) et seq., was instituted in the District Court to recover damages for the death of George Ben Stancil who was electrocuted on contact with a high tension wire on the Government's Pier No. 1 at the Hampton Roads Army Terminal in Norfolk, Virginia. Stancil's widow, as administratrix of his estate, charged that the death was due to negligent failure to insulate the wires and failure to warn Stancil of the latent danger, allegedly in breach of a non-delegable duty owed him by the Government as owner of the pier. The United States impleaded J. R. Houska Company, the general contractor who had been engaged to rehabilitate Piers 1 and 2 of the Terminal, and the painting subcontractor, Stancil's employer, Shaw Paint and Wallpaper Company. After a trial, the District Court entered judgment for the United States, and this appeal was taken.

The work contracted for was extensive; the time for performance, originally set at one year, was later enlarged to seventeen months. The floor area of the two piers is approximately 7½ acres. It was planned to continue normal operations in certain portions of the piers while in others repairs were in progress under the contract.

Painters did not work on the piers continuously during the life of the contract. Apparently they would be brought in whenever a portion of a pier was made ready for them by Houska or one of the subcontractors. A day or two before the fatal accident, the Government's inspector, Lassiter, had asked Houska's superintendent, Moyer, to send a man to paint in the area of Bay 58 which is on the northwest end of Pier No. 1. More than sixty men were then working on the pier; practically all of them at the northwest end. Precautions had been taken to protect the workmen in that area; the gantry cranes had been shifted to another part of the pier, and the electric wires supplying the cranes had been removed.

Instead of being sent to the northwest end of the pier, as the Government in-

spector had requested, Stancil was sent to the east end, 1100 feet away. It was while there engaged in painting, 30 or 35 feet above the pier level, that Stancil touched the live wire and met his death. Shaw's superintendent, Henniker, who directed Stancil to the east end of the pier testified that Houska's superintendent, Moyer, had requested the east end to be painted. In his testimony Moyer admitted this, and also that he failed to take measures to have the electrician cut off the power in that area. Lassiter testified that he did not know that anyone was working there at the time.

 The District Court correctly stated that the essential question in the case was whether the Government's invitation to work extended at the time to the place where Stancil was working. Obviously the duty which a property owner owes to an invitee does not apply in places beyond the invitation, or where the invitee is not reasonably expected to go. On a job of this size, under the circumstances in which the work was to be done, it cannot be inferred as a matter of law that permission has been given to work anywhere at any time. The District Court concluded that the Government's duty extended only to those places where it had been notified that workers would be sent.

While we agree with the general proposition announced by the District Court, there is testimony in this record which apparently indicates that the Government did not insist that its inspector be notified before a subcontractor could send a man to a particular area of the pier. It appears that the general contractor's superintendent may have been invested with authority equal to the inspector to direct where men should work.

Perhaps not sufficiently noted is the testimony of the Government's inspector, Lassiter, himself:

"Q. Of your own knowledge, do you know of prior occasions that these wires on the shore [east] end of Pier 1 had been taken down? A. Yes, Sir.

"Q. Why were they? A. They had been taken down one time to take the gunite down, and several times we had the current cut and we warned these people, not anybody to work around there unless they got in touch with us.

"Q. And—A. And, in the meantime, I would go to Mr. Moyer [Houska's superintendent] and Mr. Moyer would go to Mr. Douglas [Government electrician] and have this current cut, several occasions, and there wasn't anybody supposed to work in that area *unless they saw me or Mr. Moyer* until that current was cut." (Italics supplied.)

It is difficult to be certain of the exact meaning of this testimony. It may mean that a subcontractor was free to send his men to any area of the pier provided he notified either Government Inspector Lassiter or the principal contractor's superintendent, Moyer. If so, then Shaw's superintendent, Henniker, was acting within the Government's invitation in sending Stancil to work at the east end of the pier, since it is not disputed that Moyer had ordered the work to be done at the east end. If the suggested meaning fairly attaches to the quoted testimony, Moyer was the Government's authorized agent, and his failure to notify the electrician would not relieve the Government of its responsibility to Stancil.

 The fact that Moyer was the general contractor's superintendent and not an employee of the Government is not controlling in the resolution of the issue before us. If the plan of operation was for Moyer to act as alternate for Lassiter in inviting workmen from time to time to various points on the pier, then Moyer's invitation, communicated to Stancil through Henniker, gave rise to a duty on the Government's part to safe-guard him from the hazard of electrocution. Trimyer v. Norfolk Tallow Company, 192 Va.

776, 66 S.E.2d 441; City of Danville v. Thornton, 110 Va. 541, 66 S.E. 839; Blackwell v. Hub Furniture Corp., 163 Va. 621, 177 S.E. 64.

■ The precise point seems not to have been clarified in the testimony by further inquiry by the plaintiff or the defendants. We cannot with confidence say that the above interpretation is correct; neither can we say that the record indicates lack of knowledge on the part of a person authorized by the Government to send Stancil to the place of danger. In the interest of justice, we think that the judgment should be vacated and the case remanded for a new trial in which the point may be more fully explored to determine the limits of authority entrusted by the Government to Moyer.

Judgment vacated and case remanded for new trial.