# Staunton.

## Appalachian Power Company v. J. H. Hale, Administrator of R. M. Hale, Deceased.

### September 21, 1922.

1. Electricity—*Duty of Electric Company to Repair Breaks in Lines.*—It is the duty of an electric company to employ a sufficient number of men to keep their lines in a reasonably safe condition, and on the occasion of breaks in the lines to employ extra men, if necessary, for that purpose.

2. Negligence—*Ordinary Care—Definitions—Relative Terms.*—Negligence and ordinary care are relative terms and depend upon the circumstances or necessities of the occasion. What is ordinary care under one state of facts under different conditions might be negligence. The care required must be in proportion to the danger to be avoided. The greater the danger the greater must be the care.

3. Electricity—*Negligence—Permitting Wires to Sag—Case at Bar.*—In the instant case, an action for death by wrongful act against an electric power company, it could not be said, as a matter of law, that, for the defendant to permit its transmission line charged with 88,000 volts of electricity to hang suspended within five feet of the ground for five or six days, in a pasture field, where the live stock and employees of the owner of the field might come in contact with it, without notice to the owner, was not negligence.

4. Electricity—*Negligence—Res Ipsa Loquitur—Presumption Arising from Injury from Contact with a Live Wire which is Out of Place.*—Proof that the injury complained of resulted from contact with a highly charged wire of defendant company and that the wire was out of its proper place with reference to both the ground and location of the main power line raised a *prima facie* presumption that the company was negligent in the performance of its duty and threw upon it the burden of overcoming such presumption.

5. Electricity—*Negligence—Res Ipsa Loquitur—Presumption Arising from Injury from Contact with a Live Wire which is Out of Place—Case at Bar.*—The presumption of negligence arising from an injury to a passer-by in a public street from a broken wire is not overcome so as to require the case to be taken from the jury by the testimony of defendant's employees that the wire was properly constructed and put up. Likewise, in the instant case, the testimony of defendant's witnesses that they repaired the break in the wire and left it about thirteen feet above the ground does not overcome the

presumption of negligence arising from the injury to the plaintiff's intestate, so as to require the case to be taken from the jury.

6. ELECTRICITY—*Duty of Company as to Insulation—Care to be Exercised by Company.*—A company maintaining electrical wires, over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go either for work, business or pleasure, to prevent injury. It is the duty of the company, under such conditions, to keep the wires perfectly insulated, and it must exercise the utmost care to maintain them in this condition at such places. And the fact that it is very expensive or inconvenient to so insulate them will not excuse the company for failure to keep the wires perfectly insulated.

7. ELECTRICITY—*Duty of Company as to Insulation—Contributory Negligence of Plaintiff.*—One who in the course of his employment is brought in close proximity to electrical wires, is not guilty of contributory negligence by coming in contact therewith, unless done unnecessarily or without proper precautions for his safety. And when the wires, if properly insulated, would not be a source of danger, such person is only obligated to look for patent defects and not for latent defects. And a person who touches an electric wire, from which the insulation is worn off, if he does it in ignorance of the nature and condition of the wire, is not negligent.

8. NEGLIGENCE—*Proximate and Remote Cause—Definition of Proximate Cause.*—Proximate cause does not, as a legal term, necessarily imply closeness or nearness in point of time, or physical sequence of events, but rather closeness or nearness in causal connection.

9. NEGLIGENCE—*Proximate and Remote Cause—Definition of Proximate Cause.*—The proximate cause is the superior or controlling agency as contradistinguished from those causes which are merely incidental or subsidiary to such controlling or practical cause.

10. ELECTRICITY—*Proximate and Remote Cause—Sagging Wire.*—In the instant case, the controlling cause of the accident was the negligence of defendant in leaving unprotected and within five feet of the ground one of its transmission wires carrying 88,000 volts of electricity. This was the cause which produced the injury, and without which the injury could not have happened. Certainly it could not be said, as a matter of law, that the defendant's negligence was not the proximate cause of the injury complained of.

11. ELECTRICITY—*Contributory Negligence—Injury from Sagging Wire— Case at Bar.*—In the instant case plaintiff's intestate knew nothing about electricity. He was familiar with defendant's transmission line on the farm upon which he worked and the guy wires used in connection with its poles, but had never seen the wire on which the high voltage was carried in any position except stretched from pole to pole. He had no cause to suspect that a wire which was tied to a tree and sagging within five feet of the ground, and which one witness thought was a guy wire, was the company's main line wire

27

carrying a deadly current of electricity. He did not know that the electricity would jump to him a distance of four and one-quarter inches without his touching the wire, which from the evidence appeared to have been the case. Just how the accident occurred the record did not disclose. Whether plaintiff's intestate stumbled, or stooped to pick up some object near the wire, or to go under it, did not appear.

*Held:* That a verdict for plaintiff would not be disturbed.

12. Electricity—*Contributory Negligence—Care to be Exercised by Plaintiff's Intestate—Case at Bar.*—In the instant case, an action for death caused by an electric wire of defendant, the law required the plaintiff's intestate to use ordinary care for his own protection against injury.

13. Negligence—*Contributory Negligence—Knowledge of Danger—Volenti non fit injuria.*—Plaintiff will not be held to have been guilty of contributory negligence if it appears that he had no knowledge of the danger or opportunity by the exercise of reasonable diligence to acquire such knowledge, and conversely he will be deemed to have been guilty if it is shown that he knew of the peril, and might have avoided it by the exercise of ordinary care. This element of knowledge, it should be noted, is the foundation of the maxim, *volenti non fit injuria.*

14. Electricity—*Negligence—Contributory Negligence—Questions of Law and Fact—Case at Bar.*—In the instant case, an action for death by wrongful act from contact with a · live wire, the contributory negligence of the plaintiff's intestate, like the defendant's negligence and the proximate cause of the injury, was a question for the jury, and there being some conflict in the evidence, their verdict was controlling.

Error to a judgment of the Circuit Court of Smyth county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Robert E. Scott* and *John S. Draper,* for the plaintiff in error.

*John R. Pendleton, George F. Cook* and *Grover C. Worrell,* for the defendant in error.

West, J., delivered the opinion of the court.

This is an action against the Appalachian Power Company, to recover damages for the death of R. M. Hale, deceased. The jury returned a verdict in favor of the plaintiff for $7,500.00, and the court entered judgment accordingly. To that judgment this writ of error was awarded.

For convenience, the parties will be designated as plaintiff and defendant, with respect to their positions in the trial court.

The Appalachian Power Company is the owner of an electric power line in Southwest Virginia, which runs through Smyth county. The line is composed of a number of wires each carrying 88,000 volts of electricity.

In November, 1920, a severe storm of sleet and snow caused one of these wires to break and fall to the ground on the land of Mrs. E. V. Horn. On the night of the break the lineman and his helper temporarily repaired it by splicing in about fifty feet of additional wire between the broken ends and pulling the wire out to a tree forty-six feet from the regular location of the power line and fastening it to the tree by means of another wire running about ten or fifteen feet from the tree—insulators being used between the wire on the tree and the power line thus pulled from its proper location. The two poles supporting the power line, where the break occurred, are 297 feet apart. The distance from the tree to the west pole is 252 feet, and from the tree to the east pole sixty-six feet. The line, at the point of repair, was so fastened together and to the tree that it sagged to within five feet of the ground, at a point between the tree and the nearest pole to the west.

The line thus repaired was put back into service, and remained in this condition until Sunday, November 21st. On Saturday, November 20th, about 11 o'clock

a. m., the plaintiff's intestate, R. M. Hale, who was employed by Mrs. Horn, was engaged in hauling wood from her land, where the break in the power line occurred. Mrs. Clara James, a daughter of Mrs. Horn, was assisting him in piling and loading the wood. Deceased had hauled several loads, and while he was gone with a load Mrs. James brought some wood together in a pile, near the point of the accident. Upon his return, and after stopping his team at a point indicated by Mrs. James, the deceased walked toward the power line, and, possibly, in attempting to go under the sagging wire either came in contact with it, or came so near to it, that the electricity jumped to him and burned him so severely that as a result thereof he died the next morning.

The negligence charged in the declaration consists in the defendant wrongfully and negligently permitting its light and power line to sag within four or five feet of the ground, and permitting the said wire, charged with 88,000 volts of electricity, to remain in said position for a long period of time, to-wit, six days. The defendant, in its grounds of defense, relies upon the contributory negligence of Robt. H. Hale, the plaintiff's intestate, as a defense to the action.

The plaintiff's right to recover must depend upon the answers to two questions:

1. Was the defendant guilty of negligence which was the proximate cause of the death of the plaintiff's intestate; and

2. Was the plaintiff's intestate guilty of negligence which contributed to or directly brought about his injury?

(a) Was the defendant negligent?

It is admitted that one of the wires in the defendant's high tension electric transmission line, where it crossed

the Horn farm, was broken by the weight of an unusually heavy sleet. The sleet occurred, according to some of the witnesses, on Monday, November 15th, or Tuesday, November 16th, 1920. The defendant's lineman, King, testified that when the sleet broke the line the company called him out to locate the break, and that he located it and finished repairing it on Wednesday night, November 17th, about twelve o'clock, instead of Monday or Tuesday night, according to some of the testimony.

King's assistant, Medley, testified that the ice on the wire was about an inch and a half thick when they repaired the line. B. B. Roberts testified that the sleet came on Monday and that on Wednesday there was but little ice in Smyth county, except on the mountain. C. L. Jennings testified that he lived about a mile and a quarter from the Horn place and that on Wednesday, November 17th, the ice was all off the trees at the foot of the mountain. Mrs. Clara James testified that the heavy sleet fell on Monday night, the week Hale was electrocuted. R. H. Sage also testified that the heavy part of the storm fell on Monday night.

King and his assistant, Medley, testified that they took a piece of wire and spliced the broken wire and pulled it out about fifty feet from the location of the main line and made it fast to a tree; that the wire spliced in was so securely fastened at each end of the broken wire that it could not and did not slip; that the wire running from the two poles towards the tree was partly covered with ice and drawn as tight as it could be drawn; that the power wires are so fastened to the individual poles that the line cannot slip, and that any slack which might exist between any two poles could not be projected over between other poles; that

when they completed the repair work the line between the tree and the poles did not come nearer than thirteen feet to the ground. According to their testimony, while they cannot account for it, the wire sagged from thirteen feet to within five feet of the ground after the ice melted from the wire. This would seem physically impossible as the removal of the weight of the ice ought to have caused the line to swing higher from the ground, and it must be true that if they measured the distance between the wire and the ground at all it was the wire between the tree and the east pole, and that in the darkness of the night they failed to measure the distance between the ground and the wire leading to the west pole and that this wire was left within five feet of the ground, where it was found on the morning of the accident.

When the line was thus temporarily repaired the lineman reported the fact to the managing office of the company and the current was turned on, and the line remained in that condition and was not permanently repaired and put in its proper position until Sunday, November 21st. The defendant's excuse for the delay was that the lineman and his assistant were hunting for telephone troubles and did not have the time to return to the Horn farm.

[1] It was the duty of the defendant to employ a sufficient number of men to keep the line in a reasonably safe condition, and on the occasion of breaks in the line to employ extra men, if necessary, for that purpose.

The fallen wire was in Mrs. Horn's pasture field, where her cattle and horses were kept, near her house, but the lineman failed to give notice thereof to her or her employees, either in person or by hanging a danger signal on the sagging line. She secured all of her fuel from that portion of her farm on the opposite side of

the power line from her dwelling, and it was necessary to pass under the line in hauling it to the house. It was reasonably to be expected, if a high power wire were left near the ground in a pasture where people and animals might come in contact with it, that injury might naturally and probably result therefrom.

[2, 3] Negligence and ordinary care are relative terms and depend upon the circumstances or necessities of the occasion. What is ordinary care under one state of facts under different conditions might be negligence. The care required must be in proportion to the danger to be avoided. The greater the danger the greater must be the care. It cannot be said, as a matter of law, that, for the defendant to permit its transmission line charged with 88,000 volts of electricity to hang suspended within five feet of the ground for five or six days, in the pasture of Mrs. Horn, where her live stock and employees might come in contact with it, was not negligence.

[4] Proof that the injury resulted from contact with such a wire and that the wire was out of its proper place with reference to both the ground and the location of the main power line raises a *prima facie* presumption that the company was negligent in the performance of its duty and throws upon it the burden of overcoming such presumption.

In 9 Ruling Case Law, p. 1221, the rule of evidence in cases of injury from electricity is stated as follows:

"The mere introduction of the facts surrounding an injury from electricity showing that such injury resulted from contact with live electric wires or other appliances when out of proper condition, or out of their proper place, may suffice, under this doctrine of *res ipsa loquitur* to raise a *prima facie* presumption that the electrical company having such appliances in charge

has been neglecting the performance of its duty, and to place upon the company the burden of overthrowing such presumption. The exceedingly dangerous character of electric wires lends force to the strict application of this rule of law to accidents occurring through contact with them under such circumstances, and, unless the rule of *res ipsa loquitur* is applied, it is evident in a large number of cases liability for the resulting injury will be escaped. It is within the power of these companies at all times to show whether they have exercised due care in the erection and subsequent supervision and maintenance of their wires and appliances, while to prove an action a lack of these things would be in many cases practically beyond the reach of the person injured."

In the case of *Norfolk Ry. & Light Co.* v. *Spratley,* 103 Va. 379, 49 S. E. 502, where plaintiff was injured by coming in contact with an electric wire, this court said:

"This is a clear case for the application of the common sense rule of evidence expressed in the maxim *res ipsa loquitur.* While electric companies are not held to be insurers against accidents, still it is due to the citizens that such companies, permitted as they are to use for their own purposes the streets of a city or town, should be held to the exercise of a high degree of care in the construction and maintenance of the dangerous appliances employed by them to the end that travelers along the highway may not be injured. The danger is great and care and watchfulness must be commensurate with it. (Citing authorities.) A consequence of this rule as to the high degree of care required in the use of a dangerous current of electricity is the presumption of negligence that is raised by the fact that a dangerous wire has broken and fallen into the street."

[5] "*    *    * The presumption of negligence arising from an injury to a passer-by in a public street from a broken wire is not overcome so as to require the case to be taken from the jury by the testimony of defendant's employees that the wire was properly constructed and put up."

Likewise the testimony of the defendant's witnesses in the instant case that they repaired the break in the wire and left it about thirteen feet above the ground does not overcome the presumption of negligence arising from the injury to the plaintiff's intestate, so as to require the case to be taken from the jury.

The general doctrine on the subject of the duties of electrical companies is stated by Joyce on Electric Law, section 445, as follows:

[6, 7] "A company maintaining electrical wires, over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go either for work, business or pleasure, to prevent injury. It is the duty of the company, under such conditions, to keep the wires perfectly insulated, and it must exercise the utmost care to maintain them in this condition at such places. And the fact that it is very expensive or inconvenient to so insulate them will not excuse the company for failure to keep the wires perfectly insulated. So one who in the course of his employment is brought in close proximity to electrical wires, is not guilty of contributory negligence by coming in contact therewith, unless done unnecessarily or without proper precautions for his safety. And when the wires, if properly insulated, would not be a source of danger, such person is only obligated to look for patent defects and not for latent defects. And a person who touches

an electric wire, from which the insulation is worn off, if he does it in ignorance of the nature and condition of the wire, is not negligent."

The foregoing statement from Joyce is declared by this court in *Danville* v. *Thornton*, 110 Va. 550, 66 S. E. 839, to be a correct statement of the general rule.

To the same effect is *Mitchell* v. *Raleigh Elec. Co.*, 129 N. C. 166, 39 S. E. 801, 55 L. R. A. 398, 85 Am. St. Rep. 735; *Thomas* v. *Wheeling E. Co.*, 54 W. Va. 395, 46 S. E. 395; *Thornburg* v. *City & E. G. R. Co.*, 65 W. Va. 379, 64 S. E. 358; *Clements* v. *Louisiana Elec. Co.*, 44 La. Ann. 692, 11 South. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348.

[8] Proximate cause does not, as a legal term, necessarily imply closeness or nearness in point of time, or physical sequence of events, but rather closeness or nearness in causal connection. *Watts* v. *Southern Bell Tel. Co.*, 100 Va. 47, 40 S. E. 107.

[9] The proximate cause is the superior or controlling agency as contradistinguished from those causes which are merely incidental or subsidiary to such controlling or practical cause. *Snyder* v. *Philadelphia Co.*, 54 W. Va. 149, 46 S. E. 366, 63 L. R. A. 896, 102 Am. St. Rep. 941, 1 Ann Cas. 225.

[10] The controlling cause of the accident was the negligence of the defendant in leaving unprotected and within five feet of the ground one of its transmission wires carrying 88,000 volts of electricity. This was the cause which *produced the injury*, and without which the injury could not have happened. Certainly it cannot be said, as a matter of law,· that the defendant's negligence was not the proximate cause of the injury complained of.

(b) Was the plaintiff's intestate guilty of contributory negligence?

[11] The plaintiff's intestate was a young man who had worked only on the farm and at a sawmill. He knew nothing about electricity in any form. He had seen the defendant's transmission line on the Horn farm and the guy wires used in connections with its poles, but had never seen the wire on which the high voltage was carried in any position except stretched from pole to pole. He had a right to assume that the defendant would not hang its transmission line carrying 88,000 volts of electricity in the pasture field, just a few feet above the ground. He had no cause to suspect that a wire which was tied to a tree, and which Mrs. James thought was a guy wire, was the company's main line wire carrying a deadly current of electricity. He certainly did not know that the electricity would jump to him without his touching the wire; but the expert testified that the current of electricity would jump from the wire to an object between it and the ground which came in four and one-quarter inches of it. The evidence is that he was burned from about the center of his forehead down over his body, and the burn on the forehead was "not specially deep." Had his forehead touched the wire the burn on it would doubtless have been very deep and severe. The conclusion is irresistible that his forehead came within four and one-quarter inches of the wire and the current jumped to him and passed through his body to the ground.

Just how the accident occurred the record does not disclose. Whether the plaintiff's intestate stumbled or became suddenly dizzy and fell forward near the wire, or stooped to pick up some object near the wire, or to go under it, we do not know. Had he desired to go under the wire, the presumption is he would have gone to it at a point where he could have passed under it without having to bend his body.

Mrs. Clara James, the only person present, testified that she had her back to young Hale and heard an awful loud noise and looked around and he was falling back away from the wire; that he was close to it, but she did not know whether or not he was right up at it. She says she saw some smoke and a blue blaze, and sparks and balls of fire.

[12] The law required the plaintiff's intestate to use ordinary care for his own protection against injury; but negligence is not imputable to a person for failing to look for danger when under the surrounding circumstances he had no reason to apprehend any. And where a defect or danger is unknown to the person injured, he is not negligent as a matter of law in failing to avoid it.

In *Southern Bell Telephone Co.* v. *Ellis*, 16 Ga. App. 864, 87 S. E. 766, the court said: "It was an issue of fact whether the plaintiff's husband knew the dangerous condition of the defendant's wires, and could have avoided injury to himself by the exercise of ordinary care. The trial judge accurately and fairly submitted this issue to the jury. The right of plaintiff to recover was to be tested by the conduct of her husband at the time of his alleged homicide, keeping in view his knowledge, or lack of knowledge, of the condition of the wires."

[13] In 20 Ruling Case Law, pp. 107-8, the law of contributory negligence is stated thus: "The true foundation of liability is knowledge, or what is deemed in law to be the same thing, opportunity by the exercise of reasonable diligence to acquire knowledge, of the peril which subsequently results in injury. Or, as it is generally expressed, a plaintiff will not be held to have been guilty of contributory negligence if it appears that he had no knowledge of the danger, and conversely

he will be deemed to have been guilty if shown that he knew of the peril, and might have avoided it by the exercise of ordinary care. This element of knowledge, it should be noted, is the foundation of the maxim, *volenti non fit injuria.*"

In the case of *Suburban Electric Co.* v. *Nugent's Adm'r*, 58 N. J. Law 658, 34 Atl. 1069, 32 L. R. A. 700, where a policeman was found dead at the foot of an electric pole on which was an exposed electric wire, and death was shown to have been due to electric shock, the court said: "Nor is the objection that the deceased's own carelessness contributed to the injury which caused his death more tenable. There was nothing in the plaintiff's case to show under what circumstances he received the shock which killed him, and nothing therefore upon which his negligence can be predicated. It did not appear that he had knowledge that the wire was not properly insulated, or that it was charged with electricity, and he, as well as every member of the public, was justified in presuming that this company had so constructed its electric light line and was so maintaining it that it would not be a source of danger to persons using the streets."

In *City of Richmond* v. *Gray's Adm'r*, 103 Va. 320, 49 S. E. 482, this court held that whether the decedent was guilty of contributory negligence was a question for the jury.

[14] From what has been said, it follows that the contributory negligence of the plaintiff's intestate, like the defendant's negligence and the proximate cause of the injury, was a question for the jury, and there being some conflict in the evidence their verdict is controlling. There was ample evidence to support the verdict, and under settled principles we cannot disturb it.

The demurrer was properly overruled.

A careful consideration of the arguments in the brief, upon the assignment of error relating to instructions, convinces us that the instructions as a whole fairly and fully submitted the case to the jury and that there is no error therein of which the defendant can complain.

Upon the whole record, we find no reversible error in the judgment complained of, and it will be affirmed.

*Affirmed.*