Rosa L. STANCIL, Administratrix of the Estate of George Ben Stancil, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party-Plaintiff,

v.

J. R. HOUSKA COMPANY, Inc., and Shaw Paint and Wallpaper Company, Inc., Third-Party-Defendants.

Civ. A. No. 2497.

United States District Court
E. D. Virginia,
Norfolk Division.

Jan. 9, 1961.

Fine, Fine, Legum & Schwan, Louis B. Fine, Norfolk, Va., for plaintiff.

Joseph S. Bambacus, U. S. Atty., Richmond, Va., Breeden, Howard & MacMillan, R. R. MacMillan, Williams, Cocke, Worrell & Kelly, Jack E. Greer, Rixey & Rixey, Wm. B. Eley, Norfolk, Va., for defendant.

WALTER E. HOFFMAN, District Judge.

The facts of this case are, with certain exceptions hereinafter noted, sufficiently set forth in the prior reported opinions. Stancil v. United States, D.C.E.D.Va., 165 F.Supp. 656, judgment vacated and case remanded for new trial Stancil v. United States, 4 Cir., 267 F.2d 268. The Circuit Court of Appeals, while approving of the legal conclusions arrived at by the trial court, noted a portion of the testimony of the Government inspector, Lassiter, which carried an inference that Moyer, the general contractor's superintendent, may have been the Government's authorized agent in directing the decedent and Henniker, the superintendent for Shaw Paint and Wallpaper Company, Inc., a subcontractor, to paint the portion of the pier where Stancil, the decedent, was electrocuted. The appellate court had the benefit of the transcript of the evidence which was not available at the time the opinion was prepared by the trial court. The appellate court, while apparently recognizing that plaintiff had not sustained the burden of proving that Moyer was an authorized agent of the Government, vacated the judgment *in the interest of justice*, and remanded the case for the purpose of determining the limits of authority entrusted by the Government to Moyer.

The liability, if any, of the third-party defendants is not resolved by this opinion; the parties having elected to defer this issue until a later date. It should be noted, however, that the third-party defendants were represented at the hearings, and one of said parties accepted the court's invitation to participate in the trial and argument. The other third-party defendant, J. R. Houska Company, Inc., was represented by its counsel and elected to be an "observer".

It is now clear from the testimony that Moyer, the general contractor's superintendent, Henniker, Shaw's superintendent, and the deceased, were present at the job site at approximately 8 a. m. on April 30, 1957, which was the morning of the accident. Moyer, in the presence of Stancil, directed Henniker to paint the shore (or east) end of Pier No. 1, above the railroad tracks and, in addition, advised that there was another place to be painted. Moyer stated that, while Lassiter, the Government inspector, did not request that any particular place be painted, Lassiter had told Moyer that the Government wanted the east end of Pier No. 1 closed up with protective metal, and that this area had to be painted before the covering was affixed.

Thus it is apparent that the decedent, at the time of his death, was painting in an area where Moyer, the general contractor's superintendent, had directed him to paint. The uninsulated energized power lines running from the eastern side of the pier to the power pole had not been disconnected; nor had the power been cut off. In the course of performing his work, Stancil came into contact with one of these lines and was electrocuted.

We turn, therefore, to the crucial question in this case which is, as the Court of

Appeals indicated, the authority, if any, entrusted by the Government to Moyer.

Moyer testified that the contractor worked all around the pier at various times, although, generally, the work was done in sections to facilitate the continuous use of the pier during the process of rehabilitation. There is no direct evidence to the contrary. The testimony of Lassiter, the Government inspector, is, at best, confusing.

There are two provisions of the contract between the Government and Houska which touch upon the issue. The section relating to Inspection is set forth in GC–19, and was sufficiently stated in the opinion of this Court, 165 F.Supp. at page 658. Under SC–17 entitled Co-ordination With Government Using Service, it is provided:

> "Prior to beginning operations at the site of the work the contractor shall contact the appropriate representative of the Government Using Service to receive information concerning traffic requirements and to coordinate his operations with other operations being carried out on the Base. A minimum of one-half the pier length on one side of a pier will be made available to the contractor at one time. *Insofar as is practicable the contractor shall complete all work in one area before moving to another.*"

From the language of the contract it is rather obvious that the concentration of work was to be in one area, but the contractor was permitted to work outside of that area on occasions.

The general procedure for cutting off the electrical current was for Lassiter to contact Moyer who, in turn, would contact Grotjan, the coordinator for the Army Terminal. Douglas, the electrician, would then be contacted and he would arrange for disconnecting the power. No one was supposed to work in any areas where electric wires were present unless contact was first made with Moyer, Lassiter, or Goodrich (Lassiter's assistant).

At the same time Stancil was killed, one of Houska's men was working as a carpenter in the immediate area. Indeed, Stancil and Nunn, Houska's employee, were less than eight feet apart when the accident occurred. At the first trial Lassiter testified that he knew Nunn was working on the parapet wall in the general area of the accident. Manifestly, while Lassiter may not have known that Stancil was going to paint the shore (east) end of Pier No. 1 on the day in question, he was aware of the fact that workmen were sent to various sections of the pier by Moyer, and the invitation was not specifically limited to the area of Bay 58 where the power had been disrupted, if Moyer was authorized by the understanding with the Government to direct workmen into other areas.

From this point Lassiter's testimony at the second trial resolves itself into a matter of semantics. He speaks of Moyer's *right* to place workmen wherever Moyer desired—he points out that Moyer had the *authority* to direct Stancil to paint anywhere on the project, but later qualified this statement by confining such *authority* to the work area which had been prepared by the Government—he talks of Moyer's *power* as being without restriction. In short, it can only be said that Lassiter never had the occasion to consider the limit of authority entrusted by the Government to Moyer, and, until the specific question arose, Lassiter was essentially interested in the results, whereas the details and authority to place the workmen were vested in Moyer. Even to the extent of cutting the electrical current, Moyer had the authority, according to Lassiter, to call the electrician, Douglas, without contacting either Lassiter or Grotjan. The person authorized to determine when the power was to be cut was Moyer.

This factual situation brings the case within the rule that, at places where others have a right and may reasonably be expected to go for work, business, or pleasure, there is a duty to keep wires carrying a dangerous voltage properly insulated, or otherwise warn an in-

vitee of an unsafe condition not open and obvious to a person in the exercise of reasonable care. Trimyer v. Norfolk Tallow Company, 192 Va. 776, 66 S.E.2d 441; City of Danville v. Thornton, 110 Va. 541, 66 S.E. 839; Blackwell v. Hub Furniture Corp., 163 Va. 621, 177 S.E. 64. As Moyer was the designated party to determine where workmen should be so occupied, and the Government was not interested in this phase of the details other than to follow the overall plan that where practicable the work was to be done in sections, the Government, as the owner of the project, is not exonerated where the work to be performed was inherently hazardous in the area wherein the work could be reasonably anticipated. Bowers v. Town of Martinsville, 156 Va. 497, 159 S.E. 196; Epperson v. De Jarnette, 164 Va. 482, 180 S.E. 412. That Houska was an independent contractor is clear. Boyd, Higgins & Goforth v. Mahone, 142 Va. 690, 128 S.E. 259. But this fact, standing alone, does not relieve the owner of the non-delegable duty to warn where hazardous work is being performed within the scope of the invitation.

■ While not stressed at the time of argument, the contention was advanced at trial that decedent was guilty of contributory negligence and hence there can be no recovery. This question was not considered in either of the prior opinions. It merits but little discussion at this time. It is conceded that Stancil was not warned as to the existence of live wires at the time and place in question. Moyer had erroneously assumed that Stancil would start painting at a place farther removed from the wires, and that it would be noon or thereafter before the danger area was reached. Moyer further assumed that Stancil would then notify him when he was ready to paint in the vicinity of the wires. Under the law of Virginia the decedent is presumed to have exercised ordinary care for his own safety in the absence of evidence to the contrary, and the burden is upon the defendant to prove the decedent's contributory negligence by a preponderance of the evidence, unless such contributory negligence is disclosed by the plaintiff's evidence or may be fairly inferred from all the circumstances. Burks v. Webb, 199 Va. 296, 99 S.E.2d 629. Assuming arguendo that Stancil was a painter of some experience accustomed to working around electric wires, he had the right to expect that the current had been disrupted when he was ordered, without warning, to paint in the vicinity of wires, especially when such an order emanated from the superintendent of the entire project who was known to be the individual charged with the duty of giving orders to cut the current. For all we know, Stancil may have learned that Moyer had this responsibility. Certainly an employee would not be required to anticipate that a competent superintendent would order him to paint in a known hazardous place without at least a warning. Clearly the defense of contributory negligence is untenable.

■ George Ben Stancil is survived by his widow, Rosa L. Stancil, and four children, the youngest being 26 years of age at the time of the first trial in June, 1958. There is no suggestion that the children are in any manner handicapped, mentally or physically, or were, at the time of death, dependent upon their father. The death limit in Virginia, as of the date of the accident, was $25,000. A judgment in the sum of $25,000 will be entered in favor of the plaintiff against the defendant, United States of America, and the Court directs that the entire recovery, less twenty per cent (20%) attorney's fees and such non-recoverable court costs and expenses as may be allowed by the Court, be paid for the benefit of Rosa L. Stancil to the exclusion of the four children. The Court having been advised that the compensation insurance carrier for Shaw Paint and Wallpaper Company, Inc., has heretofore paid certain death benefits pursuant to the Virginia Workmen's Compensation Act, Code 1950, § 65–1 et seq., said insurance carrier shall be granted leave to file its petition herein seeking reimbursement, prior to the entry of a

formal judgment order, conditioned that said petition be filed within twenty (20) days from this date. If a hearing is requested on said petition by any party in interest, the same shall be granted.

The liability, if any, of the third-party defendants is reserved for further consideration.

Present judgment order after twenty (20) days, upon notice to counsel.