Josie Mae ELKINS, Administratrix of the Estate of Ray Elkins, Deceased, and John A. Williams, Jr., Appellants,

v.

UNITED STATES of America, Appellee.

No. 14080.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1970.

Decided June 24, 1970.

James A. Eichner, Richmond, Va. (Allen, Allen, Allen & Allen, Richmond, Va., on brief) for appellants.

Robert S. Irons and James G. Welsh, Asst. U. S. Attys., for appellees.

Before BRYAN and CRAVEN, Circuit Judges, and JONES, District Judge.

**WOODROW WILSON JONES, District Judge:**

The appellants brought this action against the appellee, United States of America, under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b) for damages for the death of Ray Elkins and the personal injuries of John A. Williams, Jr., resulting from an explosion of an airplane tire while they were removing it from the rim. The matter was heard before the District Judge who denied recovery on the basis of contributory negligence of the appellants. The appellee accepts, for the purposes of this appeal, the District Court's finding of negligence on the part of the Government thus leaving for this Court the determination of whether the finding and conclusion of contributory negligence was erroneous.

In the summer of 1964, Jack E. Ferguson, a used tire dealer of Roanoke, Virginia, purchased a mixed lot of surplus used automobile, truck, airplane and small equipment tires from the United States at the Norfolk Naval Shipyard, Portsmouth, Virginia, and had them shipped and unloaded upon his premises. Ferguson, who had been in the used tire business for about fifteen years, intended to remove the tires from the rims and dispose of the tires and rims separately as used equipment. Elkins had been employed by Ferguson to repair a transmission on a car and while on Ferguson's premises expressed the desire to have the job of removing the used tires from the rims. After inspecting the tires Elkins traded with Ferguson to perform the service for a fixed price. Elkins then employed Williams to assist him and they began the task of removing the tires from the rims. The first day they removed some 15 to 20 tires without incident, but on the second day, September 17, 1964, while attemping to remove an airplane tire 56″ x 16″ mounted on a 28″ rim, an explosion occurred resulting in the death of Elkins and injuries to Williams.

In the lot of 35 to 40 tires purchased by Ferguson were 4 – 32 ply 56″ x 16″ used tires mounted on rims similar to the ones used on B–50, B–36 and B–47 planes and a rig to test catapults on aircraft carriers. These tires when in normal use for which intended are inflated at 250 pounds per square inch and weigh about 281 pounds. The total weight of the tire, tube and rim was in excess of 600 pounds. The tire was mounted on a split rim which was fastened together with twelve ¾ inch bolts. To dismantle, it was necesary to remove the twelve lug bolts and then remove one-half of the rim from one side and the other half from the other side of the tire. To attempt the removal of the bolts without deflating the tire and tube was extremely dangerous and would without doubt result in injury to persons and property.

The size of the rim required the attachment of a valve stem extension as the means of access to the valve stem of the tube. This extension was a hollow metal tube housing a core or plunger, devised to make contact with the core of the valve in the tube. The extension is screwed on the valve stem of the tube and extends about an inch from the rim, secured by a lock nut, so that the tire and tube may be conveniently inflated and

deflated. These devices have been in common use on truck and plane tires for many years and since 1957 on passenger cars, and are readily obtainable on the open market.

■ It is a matter of common knowledge that deflation is the first and fundamental procedure for the removal of any tire from a rim. Indeed, the modern automobile tire can be removed from the rim in no other manner. Any attempt to do so would be dangerous to life and limb. On the day of the accident Elkins and Williams had removed two of the four large airplane tires from the rim without incident. They were equipped with a valve core extractor, the same as used on an automobile tire, and used it on these airplane tires. Williams removed the valve core from both tires and testified that air came from one and not from the other. When they tried the third tire the valve core was removed but no air came out and observing that the valve had been damaged they put the tire aside for they were not sure the air was out of it. They then undertook the removal of the fourth tire. Williams removed what he thought was the valve core with a "valve core extractor", and no air came out. Elkins examined the tire and the valve core and declared it to be "an empty one". Elkins, Williams, and perhaps Ferguson "rolled the tire up to where we'd been working on them, and stood it up—propped it up against another tire, and Elkins and I proceeded to take it apart". Elkins held the bolts and Williams unscrewed the nuts and the tire apparently exploded after three or four bolts were removed. Neither Elkins nor Williams made any test to determine whether the tire was inflated. They failed to perform the almost universal test of depressing the valve with a small object or use a gauge to determine the presence of air and its pressure.

Appellants contend the District Court erred in concluding that Elkins and Williams were negligent. In substance they say the finding and conclusion of the trial court that they were contributorily negligent is clearly erroneous for the following reasons: (1) the finding that Elkins had prior lengthy experience removing tires from their rims is not supported by the record; (2) there was no showing by the Government that the appellants knew or had reason to know the tire was inflated; and (3) the trial court misapplied the Virginia law regarding contributory negligence.

■ The Virginia law presumes an injured party in a tort case exercised ordinary care for his own safety and places upon the defendant the burden to prove contributory negligence by a preponderance of the evidence, unless the contributory negligence is disclosed by the injured party's evidence or can be fairly inferred from the circumstances. Burks v. Webb's Admrx., 199 Va. 296, 99 S.E.2d 629. Appellants say the Government failed to carry this burden of proof.

■ The record discloses Elkins was in charge of the operation of removing the tires from the rims, and that he had more experience than Williams. Both had prior experience of removing automobile tires from rims but neither had worked on airplane tires until they began this job for Ferguson. Elkins was a mechanic and possessed sufficient skill to work on automobile transmissions. The first work performed by Elkins for Ferguson was on the transmission of a car. It is a reasonable inference that a mechanic skilled enough to work on an automobile transmission would know how to determine whether a tire was inflated and the danger involved in removing the bolts from a split rim without deflating the tire. However, there is positive evidence that both had considerable experience in changing tires and that both knew the dangers involved. Ferguson's testimony when viewed as a whole, establishes that Elkins had worked and "fooled" with tires for many years. His experience included the changing of truck as well as automobile tires. Williams testified that he had experience with tires and that "anybody with common sense knows if there is air pressure

in a tire it will blow your head off". It is true, as the Government's instructions to military personnel indicated, these inflated high pressure tires are as dangerous as a "live bomb" and must be handled with care. The same is true with the tires of motor graders, trucks and other heavy equipment, and to a lesser degree, the tires of automobiles and even riding lawn mowers used around every household.

Both Elkins and Williams knew the danger of removing the bolts from the rim without deflating the tire. They had already removed 15 to 20 airplane tires, two of which were of the large high pressure type similar to the one which exploded. One of these was inflated and they successfully deflated and removed it from the rim. A third one was put aside because they were not sure it was "empty". When they reached the fourth high pressure tire Williams and Elkins made no tests to determine whether it was inflated except to remove what they thought was the valve core. They failed to use the practical and common practices of kicking the tire, jumping upon it with both feet, or striking it with a hammer or a section of pipe. The use of a simple device such as a small screwdriver, a piece of wire, a common nail, an old-fashioned wooden match stem or even a fingernail to depress the valve core of the extension valve stem would have revealed not only the presence of air in the tire but would have deflated it so that it could have been removed from the rim in safety. There is nothing complicated about this procedure for boys with bicycles and men with cars, trucks and farm tractors have been doing it for years.

There is substantial evidence in the record to support the trial court's findings that Elkins had prior lengthy experience removing tires from rims and that the appellants knew or had reason to know the tire was inflated.

"Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52(a), Federal Rules of Civil Procedure; Great Atlantic and Pacific Tea Company v. Jones, 177 F.2d 166 (4th Cir. 1949). The cases are legion in this Circuit supporting this principle and it is so well established that recitation of them here would serve no useful purpose.

The appellants cite and rely upon Stancil v. U. S., 196 F.Supp. 478 (E.D. Va.1961) to support their contention that the Government failed to carry the burden of proof and the court erred in finding contributory negligence. A reading of *Stancil* shows that it is not analogous for there the plaintiff had every right to expect the current to be disrupted when he was ordered to paint in a particular area by the superintendent of the entire project who was charged with the duty of seeing that the power was cut off. The district judge in that case said:

"Assuming arguendo that Stancil was a painter of some experience accustomed to working around electric wires, he had the right to expect that the current had been disrupted when he was ordered, without warning, to paint in the vicinity of wires, especially when such an order emanated from the superintendent of the entire project who was known to be the individual charged with the duty of giving orders to cut the current. * * * Certainly an employee would not be required to anticipate that a competent superintendent would order him to paint in a known hazardous place without at least a warning."

In the case at bar the evidence clearly shows that the appellants were in no position to assume the tires to be without air. Ferguson testified that before Elkins took the position they looked at the tires and most of them contained air and Elkins was deflating them as he went along with the work. The testimony of Williams shows conclusively that many of the plane tires, including at least one of the 4 high pressure ones contained air and they were successfully dismantled by the appellants. One large high pressure tire had been put aside because they

were not sure it was "empty". A warning could have only informed the appellants of something which they already knew, that is, that some of the tires were inflated and some were not. Williams testified on several occasions that he knew it was dangerous to attempt to dismantle a tire with air in it. Nevertheless, he and his associate, Elkins, proceeded to remove the bolts from the high pressure tire without making any test for the presence of air except to remove the valve core from the extension. The record discloses substantial evidence that they failed to exercise ordinary care for their own safety.

The parties seem to agree as to the law of contributory negligence as applied in the State of Virginia. Both briefs refer to the statement contained in Appalachian Power Co. v. Hale, 133 Va. 416, 113 S.E. 711 (1922) where the court said, quoting from Ruling Case Law:

> "The true foundation of liability is knowledge, or what is deemed in law to be the same thing, opportunity by the exercise of reasonable diligence to acquire knowledge, of the peril which subsequently results in injury. Or, as it is generally expressed, a plaintiff will not be held to have been guilty of contributory negligence if it appears that he had no knowledge of the danger, and, conversely, he will be deemed to have been guilty if shown that he knew of the peril, and might have avoided it by the exercise of ordinary care. * * *"

The Government would merely add the often repeated statement of the Courts of Virginia that "The essence of contributory negligence is carelessness", and cites the case of Tomlin v. Worley, 206 Va. 344, 143 S.E.2d 866 (1965).

"One cannot charge another in damages for negligence injuring him when his own failure to exercise due care was responsible for the occurrence of which he complains". Smith v. Virginia Electric Power Company, 204 Va. 128, 129 S.E.2d 655.

Any reasonable application of these statements of the law of contributory negligence to the findings of the District Judge will reveal that his decision was within the letter and spirit of the law of Virginia.

The District Court's findings are not clearly erroneous and he properly applied the Virginia law of contributory negligence. Therefore, the judgment of the District Court is affirmed.

CRAVEN, Circuit Judge (dissenting):

I think this case was tried below on the wrong theory. The government's own literature described inflated aviation tires as being "dangerous as an armed bomb". The record establishes that airplane tires the size of these were so dangerous and so difficult to deflate and dismantle in reasonable safety that armed forces personnel were actually required to attend school to learn how to handle them. The Navy Manual in evidence, which unfortunately was never brought to the attention of plaintiff's decedent and the other seriously injured plaintiff, not only warned armed forces personnel of the danger, but instructed on the precise matter that caused death and injury here.

WARNING

Before any attempt is made to break the tire beads loose from the wheel flanges, verify that the tire has been completely deflated and that the valve core has been removed. *If the valve stem is equipped with a valve extension, remove the extension and make sure that the second valve core has also been removed.* Never attempt to remove wheel bolts or break beads loose until this check has been made. A tire not completely deflated is as *dangerous as an armed bomb.* (Emphasis added)

It seems to me unjust that the United States may with impunity offer for sale and sell to the general public without any warning whatsoever and without instructions to diminish the

risk—precautions obviously thought necessary for the protection of their own trained armed forces personnel—inflated aircraft tires described by its own instruction manual as "dangerous as an armed bomb". If there ever can be justification for strict liability, it seems to me that this is such a case.

Strict liability does not rest upon a comparison of faults. The premise of such liability is a value judgment that transfers, in extra hazardous situations,

> some of the duty to protect potential victims from the victims themselves to the entrepreneur. In such a context ordinary questions of negligence on either side of the scale become irrelevant. Human failings like inadvertance are simply part of the setting that makes a toll of the enterprise inevitable.

2 Harper & James, The Law of Torts, Section 22.7 at 1217 (1956).

"It frequently is said that the contributory negligence of the plaintiff is not a defense in cases of strict liability." Prosser, Law of Torts, Section 78 at 538 (1964). The reason for the rule rests in part on the "policy which places the absolute responsibility for preventing the harm upon the defendant, whether his conduct is regarded as fundamentally antisocial, or he is considered merely to be in a better position to transfer the loss to the community." Prosser, *supra.* I can't think of an "entrepreneur" better able to do so than the United States.

"[I]n cases where the defendant is carrying on an abnormally dangerous activity, such as blasting [or the sale of "armed bombs"], contributory negligence which *merely fails to discover the peril and avoid it* will not prevent the plaintiff's action." Prosser, *supra,* at 539. That it has done so here compels my dissent. I would reverse and remand for a new trial on the theory of strict liability.