## WASHINGTON GAS LIGHT CO. v. BAKER.

## PUBLIC UTILITIES COMMISSION OF DISTRICT OF COLUMBIA v. BAKER.

## CASE v. BAKER.

### Nos. 11084–11086.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 29, 1951.

Decided Dec. 26, 1951.

Jr., and C. Oscar Berry, Washington, D. C., were on the brief, for appellant in No. 11084.

Mr. Lloyd B. - Harrison, Asst. Corp. Counsel for the District of Columbia, with whom Mr. Vernon E. West, Corp. Counsel, was on the brief, for appellant in No. 11085.

Mr. William A. Roberts, Washington, D. C., for intervenors William A. Roberts and the law firm of Roberts & McInnis in Nos. 11084–5.

Mr. John H. Connaughton, Washington, D. C., for appellant in No. 11086.

Mr. Vernon V. Baker, pro se, and Mr. Herbert P. Leeman, Washington, D. C., for appellee in Nos. 11084–5–6.

Mr. William A. Roberts, Washington, D. C., with whom Mrs. Irene Kennedy, Washington, D. C., was on the brief, for William A. Roberts and the law firm of Roberts & McInnis, *amici curiae* in No. 11086.

Before EDGERTON, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

These appeals raise questions as to the validity of orders of the District Court made on remand after our decision in Washington Gas Light Co. v. Baker, 88 U.S.App.D.C. 115, 188 F.2d 11, decided December 21, 1950, certiorari denied, 1951, 340 U.S. 952, 71 S.Ct. 571, 95 L.Ed. 686. We there affirmed the District Court in holding invalid an increase in gas rates which had been approved by rate order No. 3600 of the Public Utilities Commission of the District of Columbia, entered November 9, 1949.

I. During the pendency of the appeals in Nos. 11084–5 Roberts & McInnis and William A. Roberts, attorneys, filed a motion for leave to withdraw as counsel for Vernon V. Baker, appellee, personally, to intervene, and to appear as *amici curiae*. We postponed acting on this motion until argument of the appeals, allowing the moving attorneys to file briefs and argue orally. We now dispose of the motion as follows: permission to withdraw as counsel for Vernon V. Baker, appellee, personally,

Mr. William E. Leahy, Washington, D. C., with whom Messrs. William J. Hughes,

is granted[1]; leave to intervene is granted, and leave to appear as *amici curiae* is denied, since intervention is allowed. The briefs have been considered.

II. In No. 11086 John V. Case had petitioned the District Court for leave to intervene as a gas consumer. He protested the allowance of attorneys' fees and expenses, hereinafter discussed, and alleged that no other party protected the interests he asserted. He appeals from the denial of his petition to intervene.

Mr. Case did not seek to intervene until the District Court had allowed the fees and expenses to which he objects and until the Company had filed its notice of appeal from the allowance orders.[2] Rule 24(a), Fed.Rules Civ.Proc., 28 U.S.C.A., provides for intervention on "timely application." It was well within the discretion of the District Court to deny the petition as untimely. See Simms v. Andrews, 10 Cir., 1941, 118 F.2d 803; Lockwood v. Hercules Powder Co., D.C.W.D.Mo. 1947, 7 F.R.D. 24; see, also, 4 Moore's Federal Practice (2d ed.), pp. 120–1; United States v. California Co-op. Canneries, 1929, 279 U.S. 553, 566, 49 S.Ct. 423, 73 L.Ed. 838. Although Mr. Case has not sought intervention in this court, we have nevertheless considered his briefs as though filed by him as *amicus curiae* in Nos. 11084–5, and we have heard him in oral argument.

III. The appeals in Nos. 11084–5 bring before us the following questions, namely, whether it was error for the District Court (1) to require interest, fixed by the court at 5%, to be paid by the Company on refunds to be made to consumers of excess gas rates collected under the invalidated rate order; (2) to allow $55,000 attorneys' fees to be paid out of the fund composed of such excess rates; (3) to provide for the reimbursement of $12,715.48 expenses incurred by attorneys, likewise to be paid out of said fund, and (4) to refuse to remand the case to the Commission.

(1) *Interest.* Since there is no statutory authorization of interest, in the circumstances here presented, the question is to be decided on equitable considerations. United States v. United Drill & Tool Corp., 1950, 87 U.S.App.D.C. 236, 183 F.2d 998.[3]

There is no reason to believe the rate increase was not sought in good faith. The public body charged with primary responsibility authorized the higher rates. The proceedings in which the Company and the Commission thereafter sought to defend this action were not unduly delayed. During the pendency of the appeal in this court we refused to stay collection of the increase. We required the amounts involved to be impounded, but neither in our impounding order nor in the proceedings antecedent to it was any suggestion advanced that interest would attach if the appeal failed. The District Court had not even expressly provided for a refund, though it had invalidated the higher rates. Once the main litigation was finally decided the bulk of excess collections was, as required, refunded with reasonable expedition, without interest. We refused to stay the refunding while the interest question was on appeal. In all these circumstances we conclude that it was error to order the Company to pay interest. Our conclusion is based on the equities, not on lack of power in the District Court due to the fact that while Washington Gas Light Co. v. Baker, supra, was pending in this court we had denied an application for interest. That action is to be construed only as a ruling that we did not deem such an allowance on an original application to us at that time to be proper.

(2) *Attorneys' fees.*[4] We consider this problem first in general and then in its application to the several attorneys for the plaintiff.

(a) *In general.* As a consequence of the main litigation about $1,250,000 was required to be refunded to approxi-

---

1. Mr. Baker has consented to this action.

2. The Commission's appeal, however, was not noticed until the day following Mr. Case's petition.

3. The case cited dealt with a statutory obligation, but the statute made no provision for interest.

4. See District Court orders of May 10, 1951, and June 15, 1951.

mately 175,000 gas consumers. Allowance of fees to be paid from this fund which inured to the general benefit of gas consumers was permissible. This is so without regard to the question whether or not the litigation carried forward by Mr. Baker and his attorneys was a class action. The Supreme Court has held in Sprague v. Ticonic Nat. Bank, 1939, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184:

" * * * Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it. But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation—the absence of an avowed class suit or the creation of a fund, as it were, through *stare decisis* rather than through a decree—hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation. * * * " 307 U.S. at page 167, 59 S. Ct. at page 780.

It appears from the opinion that the costs referred to include counsel fees as well as expenses, and that the ability of equity to do justice between a party and the beneficiaries of his litigation includes the power to require such beneficiaries to contribute to the fees and expenses. We think the principles and reasoning of the case fully support the action of the District Court here. The case also disposes of the contention that the allowance of counsel fees was erroneous because inconsistent with the mandate which followed our decision of December 21, 1950. In the words of the Supreme Court, "While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." 307 U.S. at page 168, 59 S.Ct. at page 781.

As we have said with respect to interest, so too with respect to attorneys' fees, we did not dispose of the merits of the question when we denied allowance of such fees on application to us pending the appeal. That was not an adjudication covered by the mandate which thereafter issued as a consequence of our decision on the merits. The question of fees re-

mained within the competence of the District Court on application to it. Nor was that court precluded because of the absence of any reference to attorneys' fees in the statute governing review of Commission orders. The court could deal with the matter in the exercise of its equitable powers over a fund under its control. As illustrative of the exercise of a similar power this court required the excess rates to be impounded. No one seriously questions the legality of that order. Yet the review statute contains no provision for it. We agreed with the Company and the Commission that it would be inequitable to stay the continued collection of the increased rates pending the litigation. Otherwise both Company and consumers would suffer hardship if the increase should be ultimately upheld. The solution was to permit the rates to remain in effect but to impound the questioned excess so that it could be readily made available for refund if invalidated. This was done in the exercise of an equitable discretion well within the authority of the court. See Ford Motor Co. v. National Labor Relations Board, 1939, 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221. A like basis for action carries through into the disposition of the fund. In the mandate on the main case we accordingly said that the District Court should enter "appropriate order or orders to effect the distribution to rate-payers." In making such order or orders the District Court could provide payment for professional services which aided in making the fund available for distribution. Sprague v. Ticonic Nat. Bank, supra.

■ (b) *William A. Roberts and Roberts & McInnis.* Turning to the application of this ruling to William A. Roberts and Roberts & McInnis, clearly these attorneys may participate in the fees. They were the principal attorneys in the case acting on behalf of consumers. It is no doubt true that Mr. Roberts advised Mr. Baker and the Federation of Citizens Associations, which initiated the contest against an increase in rates, that his work was to be without expectation of compensation. The Federation, as its name implies, is a federation of citizens' associa-

tions. It and its constituent associations engage voluntarily in a variety of public activities. Were the Federation or any of its officers or agents, including Mr. Baker, to pay the fees, apart from their status as consumers, we would have a different situation. The fees, however, are to be paid out of the total fund, by all beneficiaries. Mr. Roberts and the members of his firm were not acting as officers of the Federation, but as lawyers coming into the case from outside, though at the instance of the Federation in the litigation itself. It is not apparent that they intended to renounce fees except as against the Federation and Mr. Baker. While a happier situation would confront us if the arrangements had been clearer, lack of a clear understanding covering the situation which developed left the court below free to permit compensation to these attorneys out of the fund which arose as a consequence of the litigation. Had the case failed it is unlikely they could have been compensated. Certainly no obligation in that regard would have rested, or rests now, upon the Federation or Mr. Baker. More precise arrangements no doubt will be made should occasion arise in the future. We do not intimate they would not be enforced by the courts should they preclude any compensation whatsoever.

■ (c) *Vernon V. Baker and Herbert P. Leeman.* It appears from the record of the proceedings before the District Court on the order [5] for payment of fees to attorneys for plaintiff that the court contemplated that Mr. Baker and Mr. Leeman would participate in the fees, though the reference [6] to a Special Master is subject to the construction that the right of participation, as well as division among participants, was to be decided by the Special Master.

It appears that Mr. Baker, though a consumer, became an actual party to the contest on the rate increase because he was chairman of the Public Utilities Committee of the Federation. He became the party in whose name the court litigation was successfully prosecuted. He is also an attorney and as such aided in the litigation. Mr. Leeman, who became one of the attorneys of record for Mr. Baker, was president of the Federation. There is evidence that their services were to be voluntary, in the public interest, and without compensation. If so, and no more could be said, we think sound public policy growing out of their relationship to the Federation and the voluntary and public nature of its activities, would prevent award of fees to them. In this respect their situation differs from that of Mr. Roberts and his firm, who were not connected with the Federation as officials. But it is not clear on the record before us at this time that the understanding between Mr. Baker and Mr. Leeman, on the one hand, and the Federation, on the other, envisaged such a situation as actually arose. If the understanding was that in no circumstances were they to be compensated, the court, in view of their relationship with the Federation, should require adherence to the understanding. If, however, there was no intention to preclude their participation in a fee paid not by the Federation but by such a fund as has become available for the benefit of rate-payers generally, it was within the discretion of the District Court to permit them to participate in the fees allowed. The participation of Mr. Baker and Mr. Leeman will depend upon the application of the principle above stated to the facts. We do not disturb the reference itself to the Special Master, but it will be considered as amended or amplified to enable the Master to apply the criteria here set forth.

(d) No serious question has been raised as to the amount of fees allowed, and we do not disturb the action of the trial court in that regard, or in referring to a Special Master the question of the amount each should receive.

■ (3) *Expenses.* The District Court ordered payment forthwith to Roberts & McInnis of $12,715.48 expenses. Although this order has been complied with, its correctness is before us for decision. Under the authority of Sprague v. Ticonic Nat. Bank, supra, expenses properly incurred by

5. May 10, 1951.

6. June 15, 1951.

the attorneys on behalf of their client in conducting the litigation may be charged against and required to be paid by the fund which inured to the benefit of rate-payers as a whole. We therefore reject the contentions aimed at disapproval of reimbursement of any expenses. Some objections, however, are directed against particular items. As to these it is argued that they were incurred on behalf of other clients and for purposes other than prevention of the rate increase. If incurred in the interest of rate-payers as a group, in the effort to prevent or invalidate an increase in rates, they are allowable, though not incurred expressly for or on behalf of Mr. Baker. If, however, they were incurred in connection with proceedings before the Commission regarding matters which did not directly involve the question of increase in rates, they are not properly chargeable against the fund, which is to be distributed to rate-payers. We are unable to decide the matter on the present record. It should be included in the reference to the Special Master, unless the District Court desires to make the determination independently. If any items are disallowed, under the principle above stated, deduction may be made as a matter of convenience from the share of Roberts & McInnis in the fees, rather than to require the firm to make a refund.

■ (4) *The question of remand.* The original order of the District Court of June 27, 1950, setting aside the rate increase of November 9, 1949, which we affirmed, Washington Gas Light Co. v. Baker, supra, provided that the matter should be "returned to the Public Utilities Commission of the District of Columbia for appropriate proceedings and action in accordance with this order." On our affirmance, however, we required remand to the District Court "for action in accordance with the opinion herein of this date, including the entry of appropriate order or orders to effect the distribution to rate-payers * * *." From what we have already said it is clear we conclude that the question of disposition of the fund, even if it might have been remanded for consideration first by the Commission, was well within the competence of the District Court and of this court. These matters having been disposed of by this opinion insofar as it is possible now to do so, very little will be left which could be remanded to the Commission, especially as any possible remaining issues are also restricted by a new application of the Company to the Commission for a rate increase, filed since argument of these appeals, and of which we take judicial notice. Remand to the Commission, in the circumstances of this case, could not be to enable a rate order to be superimposed upon the old application, filed July 14, 1949. It is possible, however, that some funds might be left over through disallowance of attorneys' fees or expense items, under the standards we have stated, or that some other problem, related to final distribution or otherwise, should have consideration by the Commission. Accordingly, upon completion of proceedings in the District Court on the matter of attorneys' fees and expenses, in accordance with this opinion, the case should be remanded to the Commission.

It is so ordered.