**Rosa L. STANCIL, Administratrix of the Estate of George Ben Stancil, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff (J. R. Houska Company, Inc., and Shaw Paint & Wallpaper Company, Inc., Third-Party Defendants).**

**No. 2497.**

United States District Court
E. D. Virginia,
Norfolk Division.
Sept. 25, 1958.

Louis B. Fine and Jerrold G. Weinberg, Norfolk, Va., for plaintiff.

W. Farley Powers, Jr., Asst. U. S. Atty., Norfolk, Va., for defendant and third-party plaintiff.

Robert R. MacMillan, Norfolk, Va., for J. R. Houska Co., Inc.

Jack E. Greer and William B. Eley, Norfolk, Va., for Shaw Paint & Wallpaper Co., Inc.

WALTER E. HOFFMAN, District Judge.

Plaintiff has instituted this action under the Federal Tort Claims Act, 28 U.S. C. § 1346(b), et sequi, seeking a recovery for the alleged wrongful death of plaintiff's decedent, George Ben Stancil, who was electrocuted in the performance of his duties as a painter under the employ of Shaw Paint & Wallpaper Company on April 30, 1957, while Stancil was engaged in painting a portion of a pier shed or warehouse located at Pier No. 1, Hampton Roads Army Terminal, Norfolk, Virginia; said pier shed or warehouse being owned and operated by the defendant, United States of America.

Defendant entered into a contract with J. R. Houska Company for the rehabilitation of the super-structures of Pier No. 1 and Pier No. 2, same to include the painting work on the sheds or warehouses. Stancil was engaged in paint-

ing the eastern side of Pier No. 1, when he met his death by coming in contact with one or more uninsulated energized power lines running from the eastern side of said pier to the power pole. The lines were approximately 33 feet above the ground. The contract between the Government and Houska contemplated that the painting would be done by a subcontractor. Shaw Paint & Wallpaper Company was the subcontractor under Houska, and was also the employer of Stancil. Among other conditions of the contract between the Government and Houska was a proviso that "The work will be conducted under the general direction of the Contracting Officer (the agent and representative of the United States) and is subject to his inspection by his appointed inspectors to insure strict compliance with the terms of the contract". While the contract originally contemplated completion of the project within one year, the time was subsequently extended to a period of approximately seventeen months. It was likewise understood that the pier would remain in use during the rehabilitation process.

The northern and southern sides of the pier in question are slightly in excess of 1,200 feet in length. The eastern end of the pier, where Stancil was electrocuted, is slightly less than 300 feet in length. Several days prior to the fatal accident, the Government Inspector requested Houska's superintendent, Moyers, to secure the services of a painter to paint the channel irons on the *west* end of the *north* side of Pier No. 2. Moyers notified Shaw's superintendent, Whitaker, to provide the painter in question and Stancil was selected. Henniker, another of Shaw's superintendents, was present at the pier on the morning in question, pointed out to Stancil the work to be done for the day, but did not notify any representative of the Government that Stancil was about to paint the east end of the shed or any portion thereof. Obviously Henniker advised Stancil that

the latter was to paint the channel irons on the *east* end of the pier. Whether the failure to transmit the Government's request to paint the *north* side rests with Moyers, Whitaker, or Henniker is immaterial [1]. The evidence discloses that the Government requested the painting to be done on the *north* side of the pier; that the high tension wires on the *north* side of the pier had been removed preparatory to painting; that the Government had no actual knowledge nor expectation that the painting would be done on the *east* end of the building; and that neither Houska nor Shaw notified anyone connected with the Government that Stancil was on the job, or coming on the job, that particular day. No request was made to cut off the power or remove the wires. There is no testimony indicating that any responsible representative of the Government saw, or should have seen, Stancil while engaged in painting on the morning in question. While Stancil commenced work at approximately 8:40 A.M., and met his death at some time between 10:30 A.M. and 11:00 A.M., the testimony does not reflect how long he had been painting in the area of the channel irons near the upper portion of the entrance to the pier shed.

We find it unnecessary to discuss the duty to insulate high voltage lines or, in the absence of insulation, the duty to post appropriate warning signs indicating the danger involved by reason of proximity to such lines. Nor are we concerned with the necessity of removal of high tension lines while painting operations are being conducted. The law is well settled that, at places where others have a right and may reasonably be expected to go for work, business or pleasure, there is a duty to keep wires carrying a dangerous voltage properly insulated, or otherwise warn an invitee of an unsafe condition not open and obvious to a person in the exercise of reasonable care. Trimyer v. Norfolk Tallow Company, 192 Va. 776, 66 S.E.2d 441; City of Danville v. Thornton, 110 Va.

1. Henniker testified that Moyers advised the area to be painted on that day.

541, 66 S.E. 839; Blackwell v. Hub Furniture Corp., 163 Va. 621, 177 S.E. 64.

The crux of this case lies in the fact that the duty which a property owner owes to an invitee is co-extensive with and limited by the invitation. The duty of exercising ordinary care to render the premises reasonably safe for the visit does not extend to places beyond the invitation and to which the invitee is not reasonably expected to go. Knight v. Moore, 179 Va. 139, 18 S.E. 2d 266; Eastern Shore, etc., Ass'n v. LeCato, 151 Va. 614, 144 S.E. 713. To hold in accordance with the theory advanced by plaintiff would be tantamount to making the owner an insurer of the safety of its premises covering in excess of 300,000 square feet of space. The invitation to paint was extended to the *west* end of the *north* side of Pier No. 1 where extensive preparations had been made to enable the painting to be done quickly and safely. The gantry cranes servicing the side of the pier were moved to the extreme west end, and the power lines supplying the cranes were removed even though these lines, approximately 20 feet from the ground, were marked as being electric wires. In excess of 60 workmen were on the job that particular day, with practically all work being confined to the west end of the north side—a distance of approximately 1,100 feet from where Stancil was working.

Plaintiff urges, however, that defendant's duty was non-delegable in nature. Manifestly Houska was an independent contractor and not an agent of the Government. This fact, standing alone, would not exonerate the owner (United States) where the work to be performed was inherently hazardous in the area wherein the work may be reasonably anticipated. Bowers v. Town of Martinsville, 156 Va. 497, 159 S.E. 196; Epperson v. DeJarnette, 164 Va. 482, 180 S.E. 412; Pierce v. United States, D.C., 142 F.Supp. 721, affirmed sub nom., United States v. Pierce, 6 Cir., 235 F.2d 467. Where, however, liability is predicated upon the non-delegable duty, the precise nature and extent of the duty must be examined, and the owner-employer is responsible only for consequences in the inherent danger zone. Mechem, Agency, 4th Ed., § 495, 496. There is no liability upon the owner for the improper manner in which an independent contractor does the detail of the work, and it is only for the condition of the premises which results from negligence of the owner for which the latter must respond in damages. Bailey v. Zlotnick, 80 U.S.App.D.C. 117, 149 F.2d 505, 162 A.L.R. 1108.

Viewed in this light and considering the precise nature and extent of the invitation which imposed the duty upon the Government as the owner of the premises, we hold that, in the absence of knowledge, actual or constructive, of Stancil's painting activities at the *east* end of the pier shed, there was no duty owed to plaintiff's decedent where directions had been given by the Government to paint at the west end of the north side—a distance approximately 1,100 feet away. The mere fact that the contract contemplated the painting to be done ultimately on the east end of the shed does not extend the invitation to perform this work there at any time. It is the extent and nature of the invitation at the time of the accident which is controlling. The contractual provisions relating to the work being done under the general direction of the Contracting Officer and subject to his inspection in no sense increases or decreases the duty owed under the circumstances of this case. Unless the Government knew, or ought to have known, that Stancil was about to work in an area made hazardous by reason of energized power lines placed at a distance of 33 feet from the ground, there existed no duty which related to the invitation.

For the foregoing reasons any discussion of contributory negligence or third-party liability is rendered unnecessary.

Counsel for defendant will prepare an appropriate judgment order in accord-

ance with this opinion, which is adopted by the Court in lieu of specific findings of fact and conclusions of law, and, after presentation to opposing counsel for inspection and endorsement, present the same for entry.