**Rosa L. STANCIL, Administratrix of the Estate of George Ben Stancil, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff,**

v.

**J. R. HOUSKA COMPANY, Inc. and Shaw Paint & Wallpaper Company, Inc., Third-Party Defendants.**

Civ. A. No. 2497.

United States District Court
E. D. Virginia,
Norfolk Division.

Dec. 8, 1961.

Fine, Fine, Legum & Schwan, Howard I. Legum, Norfolk, Va., for plaintiff.

C. V. Spratley, Jr., U. S. Atty., Norfolk, Va., Breeden, Howard & MacMillan, R. R. MacMillan, Williams, Cocke, Worrell & Kelly, Jack E. Greer, Rixey & Rixey, Wm. B. Eley, Norfolk, Va., for defendant.

WALTER E. HOFFMAN, Chief Judge.

In this action seeking a recovery under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. for the wrongful death of Ben Stancil who was electrocuted on April 30, 1957, while engaged in painting in the vicinity of high tension wires on property of the United States, there are essentially three questions remaining for consideration. They may be stated as follows:

(1) Where a defendant seeks the benefit of a third-party action and sues as a third-party plaintiff against third-party defendants, and a final judgment is entered in favor of the defendant with a resultant dismissal of the third-party action without specific reservation, and no appeal is taken by the third-party plaintiff but the plaintiff appeals and the judgment of the district court is vacated and, on re-trial, judgment is entered for plaintiff, may the third-party plaintiff further prosecute the third-party action against the third-party defendants where the original judgment order dismissed this third-party action and no appeal was taken as to this phase of the case?

(2) Irrespective of the dismissal of the third-party action, may the third-party plaintiff seek relief under Rule 60(b) of the Federal Rules of Civil Procedure?

(3) In an action under the Federal Tort Claims Act, should the Court properly charge any portion of the fee allowed to counsel for the plaintiff to the compensation insurance carrier who benefits by the recovery to the extent of the death benefits paid to the widow under the Virginia Workmen's Compensation Act?

This is a sequel to Stancil v. United States, D.C., 165 F.Supp. 656, judgment vacated, 4 Cir., 267 F.2d 268, and Stancil v. United States, D.C., 196 F.Supp. 478. The history of the case is fully stated in these opinions and will not be repeated.

Stancil was employed by Shaw Paint & Wallpaper Company, a sub-contractor under J. R. Houska Company, at the time of his death. The compensation insurance carrier for Shaw Paint & Wallpaper Company has filed a petition seeking reimbursement to the extent of the benefits paid under the Virginia Workmen's Compensation Act, Code 1950, § 65-1 et seq. The parties are in agreement with respect to the right of reimbursement, but counsel for the plaintiff argue that the proportionate attorney's fee allowed should be deducted from the recovery by way of reimbursement, as well as from the excess amount recovered by the plaintiff for the benefit of Stancil's widow. The compensation insurance carrier, Massachusetts Bonding and Insurance Company, urges that the recovery by way of reimbursement is vested and not subject to deduction for attorney's fees to counsel who were successful in their efforts. For the purpose of protecting the rights of all parties on appeal, the compensation insurance carrier should be made a party to this action, and the final judgment order shall so note.

The complaint was filed on July 18, 1957, against the United States of America. Thereafter, on February 24, 1958, shortly prior to the trial on the merits, the United States filed its third-party action against Houska and Shaw. The third-party defendants responded in due time but, due to delay in filing this third-party action and the proximity of the trial date, the case was heard on June 19–20, 1958, with counsel for Shaw participating by invitation of the Court, and counsel for Houska attending as a spectator only. On September 25, 1958, the Court filed its opinion dismissing the original action as instituted by the plaintiff and directing counsel for the defendant to prepare a final judgment order.

On September 26, 1958, a final judgment order, prepared by counsel for the United States, was submitted for entry; the order bearing the endorsement of all counsel. The third-party complaint of the United States against Houska and Shaw was ordered dismissed in the following language:

"Further, that in view of the opinion of the Court rendering unnecessary a decision as to the issues between the United States of America, defendant and third-party plaintiff, and J. R. Houska Company, Inc. and Shaw Paint and Wallpaper Company, Inc., third-party defendants, it is accordingly

"Adjudged, Ordered and Decreed that this third-party action be, and the same is, hereby dismissed."

Thereafter, on November 3, 1958, the original plaintiff appealed from that portion of the judgment order which dismissed the original claim. No appeal was noted by the United States as to the dismissal of the third-party complaint. As the third-party defendants were not parties to the appeal, they neither filed a brief nor argued the case before the court of appeals.

While substantially affirming the findings of the district court, both as to law and fact, the court of appeals nevertheless vacated the "judgment appealed from" and remanded the case to the district court for a new trial on a point not apparently clear from the record and not briefed nor argued before the appellate court.

At the time of the further hearing the third-party defendants took the position that they were no longer parties to the action in light of the final judgment of September 26, 1958. When the point upon which the court of appeals grounded its action was further explored by additional evidence, it then became apparent that plaintiff was entitled to a judgment on her original claim. The court directed that a judgment be entered in favor of the plaintiff against the United States but, because of the three questions stated above, the final order has not been entered as the court insisted that if an appeal is perfected, the court of appeals should act on all matters to bring to a conclusion this protracted litigation.

 When the three questions referred to herein were argued by counsel, the Assistant United States Attorney conceded that the authorities supported the views of the third-party defendants to the effect that the judgment of dismissal of the third-party action entered on September 26, 1958, was final and, since no appeal was taken by the third-party plaintiff, the third-party defendants were no longer legally before the court. It should be noted that there has never been any determination of the merits of the third-party complaint and, from what appears in the record, it is at least suggestive that Houska's agent was the ultimate party responsible for the death of Stancil. Anticipating that the third-party plaintiff might thereafter file a motion for relief from the judgment under Rule 60(b) of the Federal Rules of Civil Procedure, the court suggested that this matter be considered and argued. While the motion as filed hardly meets the requirements, counsel have argued the matter as though a proper motion under Rule 60(b) had been filed and, in view of the conclusions herein stated, it is essentially immaterial in any event.

Under the circumstances of this case, assuming arguendo that the dismissal of

the third-party action constituted a final judgment, may the third-party plaintiff seek relief under Rule 60(b) with particular reference to Rule 60(b) (5)? The United States argues that relief from a final judgment may be granted where a prior judgment, upon which the final judgment was predicated, has been reversed or otherwise vacated. In re Cremidas' Estate, D.C.Alaska, 14 F.R.D. 15; United States v. Williams, D.C.Ark., 109 F.Supp. 456; Patopoff v. Vollstedt's Inc., 9 Cir., 267 F.2d 863. The United States further states that the judgment dismissing the third-party complaint was based on a prior judgment—perhaps not prior in time but prior in the point of legal significance in that it became unnecessary to try the third-party action as the principal complaint had resulted in a judgment in favor of the United States. Conceding that Rule 60(b) should be liberally construed and applied to prevent a manifest miscarriage of justice, Michigan Surety Company v. Service Machinery Corp., 5 Cir., 277 F.2d 531, we do not believe that the interpretation of the Rule should be expanded to the point of now permitting an appeal from the dismissal order of September 26, 1958, by the filing of a motion under Rule 60(b) on June 23, 1961, nearly 32 months later. Rule 60(b) (1) providing for relief from final judgments entered by "mistake, inadvertence, surprise, or excusable neglect" requires the filing of an appropriate motion within one year, and it is clear that this was the remedy available to the United States. Even though the decision of the court of appeals was handed down on May 26, 1959, no motion was filed until approximately two years later. If we are to place the errors of all attorneys under Rule 60(b) (5), there would be no need for Rule 60(b) (1). While the court recognizes that the offices of the United States Attorney and the Department of Justice are subject to frequent changes in personnel, yet the United States is the most frequent litigant in our federal courts and instructions should be furnished to its attorneys in such matters. Moreover, the United States Attorney undoubtedly forwarded a copy of the judgment order to the Department of Justice and ample time remained for the more experienced attorneys to request a modification of the judgment.

■ Before approaching the discussion of Rule 41(b, c), we should examine the third-party complaint filed by the United States of America against J. R. Houska Company, Inc., and Shaw Paint and Wallpaper Company, Inc. This pleading alleges, *inter alia*, that Houska was the prime contractor for the work and had contracted with the United States "to be responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work." It further alleged that Shaw, a sub-contractor under Houska, contracted to do all the painting (with certain exceptions not pertinent) and obligated Shaw to Houska and the United States to comply fully with all undertakings and obligations of Houska to the United States so far as may be applicable to Shaw's work. Further, according to the third-party complaint, Shaw agreed to indemnify and save harmless Houska from any damage because of injury to persons or property caused by Shaw, its agents or employees. The third-party complaint alleges that Stancil's death was a result of the sole or joint negligence of Houska and/or Shaw. Clearly the claim of the United States is by way of contractual indemnity.

Each of the third-party defendants answered the third-party complaint. Houska likewise filed a cross-claim against Shaw claiming indemnification by reason of the provisions of the sub-contract.[1] Shaw answered the cross-claim. Each third-party defendant filed a motion for summary judgment but no hearing has been ordered with respect thereto and no reference was made to same in the dismissal order of September 26, 1958. The filing of these sundry pleadings preclud-

---

[1]. The order of dismissal, which is the subject matter of this controversy, makes no reference to the cross-claim.

ed a voluntary dismissal of the third-party complaint under Rule 41(a).

It is, of course, fundamental that the United States had no claim against either Houska or Shaw unless and until the United States was determined to be liable to Stancil's estate. In Piedmont Interstate Fair Ass'n v. Bean, 4 Cir., 209 F.2d 942, 946, an action was instituted by Bean against the Fair Association to recover for injuries sustained as a result of an explosion of fireworks. The Fair Association filed a third-party complaint against the Fireworks Corporation of America and Jack Kochman, Inc., alleging a cause of action by way of indemnity. As in the instant case, the parties requested a separate trial of the actions, which request was received with favor. In the course of various proceedings, with all parties participating, the district judge expressed the view that the Fair Association was exempt from liability for tort as a charitable corporation under the laws of South Carolina. Thereafter, the original plaintiff moved the court for an order of voluntary dismissal without prejudice, which motion was granted. The court also granted a motion to dismiss the third-party complaint on the ground that it failed to state a claim upon which relief could be granted. In vacating the action, and after discussing at length the right of the court to dismiss without prejudice an action filed by the original plaintiff, the court noted that the right of indemnity could not be determined at that stage of the proceeding, and said (209 F.2d 947):

"Irrespective of the right of the plaintiff to dismiss his complaint in the original action, the record is not ripe for a final adjudication of the liability of the third party defendants to the Fair Association."

The foregoing authority admittedly deals with Rule 41(a) (2), whereas Houska and Shaw are here relying upon Rule 41(b, c), but the fact remains that the possible liability of the third-party defendants is predicated upon a finding of liability upon the original defendant—a finding that was not reached in the initial memorandum filed by this court. Stancil v. United States, D.C., 165 F.Supp. 656.

Rule 41(b), as amended in 1946, with the amendments emphasized as hereinafter indicated, reads as follows:

"Involuntary Dismissal: Effect Thereof.

"For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. *In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).* Unless the court in its order of dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

Except for the emphasized portion of the foregoing Rule 41(b), the wording stands as promulgated in 1937.

Rule 41(c), which remains unchanged by the 1946 amendments, is likewise pertinent to this issue. It reads:

"Dismissal of Counterclaim, Cross-Claim, or Third-Party Claim.

"The provisions of this rule apply to the dismissal of any counterclaim, cross-claim, or third-party claim. A voluntary dismissal by the claimant alone pursuant to paragraph (1) of subdivision (a) of this rule shall be made before a responsive pleading is

served or, if there is none, before the introduction of evidence at the trial or hearing."

The contentions of the present third-party defendants are that, since Rule 41 (c) specifically states that the other portions of Rule 41 are applicable to the dismissal of third-party claims, and since this court, by its order of September 26, 1958, did not specify that the order of dismissal would not operate as an adjudication upon the merits, the third-party defendants are no longer in the case and the dismissal of the third-party complaint is an adjudication of the merits of any possible controversy between the United States, on the one part, and Houska and Shaw, on the other part. We do not believe that Rule 41(b, c) calls for such a strained construction under the circumstances of this case.

This court is of the opinion that the United States, had it appealed from the order of dismissal of the third-party complaint, would have been confronted with a dismissal of the appeal. While not precisely in point, the language of Judge Dobie in Baltimore & O. R. Co. v. United Fuel Gas Co., 4 Cir., 154 F.2d 545, is persuasive. This case was decided prior to the 1946 amendment to Rule 41(b) but, as noted above, the 1946 additions are hardly pertinent to a determination of the existing controversy. In Baltimore & O. R. Co. v. United Fuel Gas Co., supra, plaintiff sued the B. & O. for injuries sustained in a collision between a truck operated by one Kirkhart and owned by United Fuel Gas, and a train owned and operated by B. & O. Under the third-party practice then existing, B. & O. filed a third-party complaint against United Fuel Gas and Kirkhart. The trial court sustained the motions of the third-party defendants to dismiss the amended third-party complaint for lack of jurisdiction by reason of a failure of diversity of citizenship between plaintiff and the third-party defendants. The court, speaking through Judge Dobie, expressly avoided any reference to the merits of the trial court's decision, but discussed at length the issue as to whether the or-

der of dismissal was appealable by B. & O. under 28 U.S.C.A. § 225 (now 28 U.S. C.A. § 1291), and on this point said:

"The problem of what constitutes, for the purpose of appeal, a final judgment is often difficult. A classic and oft-quoted definition is that of Chief Justice Waite, in Bostwick v. Brinkerhoff, 106 U.S. 3, 1 S.Ct. 15, 16, 27 L.Ed. 73:

" 'The rule is well settled and of long standing that a judgment or decree to be final * * * must terminate the litigation between the parties on the merits of the case, so that if there should be an affirmance here, the court below would have nothing to do but to execute the judgment or decree it had already rendered.'

"After words of similar import, Circuit Judge Sanborn, in Morgan v. Thompson, 8 Cir., 124 F. 203, 204, went on to say:

" 'An order, judgment, or decree which does not have this effect—one which leaves the rights of the parties to the suit undetermined and subject to further adjudication—is not a final decision.'

\* \* \* \* \* \*

"In applying the test of what constitutes a final decision, the federal courts seem to have regarded substance rather than form, and to have been guided by practical rather than by purely theoretical considerations." [154 F.2d 546.]

Continuing from the opinion of Judge Dobie, it was pointed out that the lower court's decision dismissing the third-party complaint was not a final judgment and, therefore, not appealable; that the decision of the lower court in no sense determined the rights of the parties; and that the rights of B. & O. as third-party plaintiff were *in futuro*.

While the B. & O. case was decided prior to the effective date of the 1946 amendments which, as noted, would not be pertinent in any event, and while the cited case more especially pertains to Rule 41 as it read prior to the 1946

amendments, it clearly shows the trend of the court in considering what is a final judgment which is appealable.

Manifestly the United States has never had its day in court to try the issues raised by the third-party complaint. Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 533, 78 S.Ct. 893, 2 L.Ed.2d 953. At the suggestion of the third-party defendants, a separate hearing was accorded the parties interested in the third-party action.

Rule 41(b), as amended, requires specific findings by the court as provided in Rule 52(a) in the event the court renders judgment against the plaintiff. Kreielsheimer v. Cohen, 4 Cir., 252 F.2d 330. While the court, in its original decision, made specific findings in rendering a judgment against the original plaintiff, Stancil, we cannot agree with the third-party defendants that any such findings were made as to the third-party plaintiff. It may be true, as the third-party defendants argue, that findings under Rule 52 (a) are not required in cases of involuntary dismissal "not provided for in this rule," but the absence of such findings pointedly suggests what the court intended without modification by extrinsic evidence; such modification by extrinsic evidence being beyond the power of the court. American National Bank & Trust Co. of Chicago v. United States, 79 U.S. App.D.C. 62, 142 F.2d 571. In discussing dismissals "not provided for in this rule", the Supreme Court, in Costello v. United States, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed. 2d 551, referred to the common-law principles enunciated in Haldeman v. United States, 91 U.S. 584, 23 L.Ed. 433, and said (365 U.S. 286, 81 S.Ct. 545):

"We do not discern in Rule 41(b) a purpose to change this common-law principle with respect to dismissals in which the merits could not be reached for failure of the plaintiff to satisfy a precondition. All of the dismissals enumerated in Rule 41(b) which operate as adjudications on the merits—failure of the plaintiff to prosecute, or to comply with the Rules of Civil Procedure, or to comply with an order of the Court, or to present evidence showing a right to the relief on the facts and the law—primarily involve situations in which the defendant must incur the inconvenience of preparing to meet the merits because there is no initial bar to the Court's reaching them. It is therefore logical that a dismissal on one of these grounds should, unless the Court otherwise specifies, bar a subsequent action. In defining the situations where dismissals 'not provided for in this rule' also operate as adjudications on the merits, and are not to be deemed jurisdictional, it seems reasonable to confine them to those situations where the policy behind the enumerated grounds is equally applicable. Thus a *sua sponte* dismissal by the Court for failure of the plaintiff to comply with an order of the Court should be governed by the same policy. Although a *sua sponte* dismissal is not an enumerated ground, here too the defendant has been put to the trouble of preparing his defense because there was no initial bar to the Court's reaching the merits."

By reason of granting the request for a separate hearing on the issues raised by the third-party complaint, there was an initial bar to the court's reaching the merits of that controversy. Indeed, there is considerable doubt as to the jurisdiction of the court in dismissing the third-party complaint. But even if jurisdiction existed, it is perfectly clear that the opinion and subsequent order of dismissal is couched in sufficient language to be interpreted as a dismissal not upon the merits, thereby foreclosing an adjudication of said third-party complaint as a dismissal with prejudice. For the foregoing reasons, together with the fact that the order of September 26, 1958, was not appealable by the third-party plaintiff, the court now holds that the third-party defendants are still parties to this action and must meet the issues raised in the third-party complaint.

■ No authority on all fours with the present controversy has been directed to the attention of the court. Able briefs have been filed by counsel for Houska, in which briefs counsel for Shaw have joined. These briefs undoubtedly caused the Assistant United States Attorney to "concede" the legal position of the third-party defendants. The court has been taken to task for questioning the correctness of the concession by the government attorney. Factual concessions are generally binding upon the court, but a legal concession ascertained to be erroneous merely imposes upon the court an added burden in preparing an opinion, and is obviously not binding as it would lead to improper legal precedents.

Because of the interesting questions raised by this controversy, if an appeal is sought or contemplated, this court is of the opinion that the third-party defendants should be accorded the privilege of an appeal from an interlocutory order.

### Attorney's Fees

We reach the matter of the attorney's fees. There can be little doubt as to the attitude of Massachusetts Bonding and Insurance Company, the compensation insurance carrier. For reasons of its own, which are of no concern to this court, every movement on the part of its counsel has been adverse to the plaintiff. It did not elect to file suit against the United States in the name of Stancil's personal representative as it had a right to do under § 65–38 of the Code of Virginia 1950. Counsel for the compensation insurance carrier, by invitation, participated in both trials, taking a part in the examination of witnesses and directing such inquiries as may have tended to assist the original defendant, United States of America. These actions on the part of the insurance carrier were well within its rights and the foregoing is not stated in the sense of being critical; it merely illustrates that any recovery for the plaintiff and the compensation insurance

carrier, as their interests may appear, was the result of the efforts of plaintiff's counsel.[2] Now that a recovery is forthcoming (unless reversed on appeal) the compensation insurance carrier states that its rights became vested when the accident occurred or, in any event, when the award was made, and the total amount of benefits paid to any dependent, plus funeral expenses, must now be reimbursed to the compensation insurance carrier without deduction for attorney's fees in favor of counsel for the decedent's estate.

■ We are here dealing with a recovery under the Federal Tort Claims Act and not under Virginia law. True, the substantive law of the State applies in determining the right of recovery, the extent of damages, etc. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761. Whether the law of Virginia applies with respect to the allocation of attorney's fees under the Federal Tort Claims Act is at least debatable. In any event, we think that the final answer is the same for the purposes of this case.

■ It should be noted that no final judgment has as yet been entered. By its opinion of January 9, 1961, the court directed the preparation of a judgment order in favor of said plaintiff against the United States in the sum of $25,-000.00 and further instructed the compensation insurance carrier to file a petition seeking reimbursement for benefits paid under the Virginia Workmen's Compensation Act, should it be so advised. The petition, seeking reimbursement to the extent of $6420.00 as of January 6, 1961, was filed on January 23, 1961. Included within the foregoing sum of $6420.00 was an item of $300.00 for funeral expenses. Payments under the Act continue for a period of 300 weeks and, as of January 23, 1961, the payments were continuing. Presumably the pay-

2. The decision of the court of appeals in vacating the judgment "in the interest of justice" was of material assistance but plaintiff's counsel brought about this assistance by perfecting the appeal. [267 F.2d 271.]

ments have now ceased under the terms of the Act.

Prior to the enactment of § 65–39.1 of the Code of Virginia 1950, and the amendments to § 65–38 and § 65–39, on February 25, 1960, effective ninety days thereafter, it seems clear that the reimbursement payments to the compensation carrier were not subject to deduction for reasonable expenses and attorney's fees incurred by any plaintiff in seeking a recovery against a third party. The result is that, in many instances, the carrier recovered its payments in full without the payment of any expenses or fees. In 1960 the General Assembly of Virginia modified the existing law by providing:

> "65–39.1. Expenses and attorney's fees in action under section 65–38 or 65–39.
>
> "In any such action, or claim for damages, by such employee, his personal representative or other person against any person other than the employer, and in any such action brought, or claim asserted, by the employer under his right of subrogation provided for in § 65–38, if a recovery is effected, either by judgment or voluntary settlement, the reasonable expenses and reasonable attorney's fees of such claimants shall be apportioned pro rata between the employer and employee, his personal representative or other person, as their respective interests may appear."

As the present action was instituted long prior to the passage of § 65–39.1, the carrier contends that it is inapplicable as, indeed, a large sum by way of compensation benefits had been paid prior to February 25, 1960.

The statute is not being attacked as unconstitutional. We think it clear that it is constitutional. As was said in Savitt v. L. & F. Const. Co., 124 N.J.L. 173, 10 A.2d 728, 729:

> "[The statute] is not repugnant either to the contract clauses of the Federal and State Constitutions * * *, or to the due process clause of the Fourteenth Amendment of the Federal Constitution, * * *.
>
> "In essence, the statutory provision under review merely places upon the employer the burden of the counsel fee payable for service rendered in the third party action to his ultimate profit. * * *
>
> "The regulation of this incidental phase of the compensation statute cannot reasonably be said to impair the obligation of the basic contract."

While tacitly admitting the constitutionality of the statute, it is urged that it cannot be given a retroactive effect. Admittedly this is true as to cases or claims which have been closed prior to the effective date of § 65–39.1 but does it operate in cases where the judgment had not been entered prior to said effective date, and particularly where the carrier did not seek reimbursement until after the aforesaid date? The carrier contends that its rights became fixed and vested as of the date of the death on April 30, 1957. There is language in Southern Ry. Co. v. United States Casualty Co., 136 Va. 475, 118 S.E. 266, supporting the theory that the employer's rights relate back to the time of the injury, but the decision in that case turned upon the date the employer's "right to sue" the third party accrued under what is now § 65–38. An examination of the foregoing authority does not justify the conclusion that the employer's right to reimbursement is fixed as of the date of the injury when an action is filed by the employee under § 65–39. It is true, of course, that the carrier would have been permitted to file his petition seeking reimbursement as early as July 18, 1957, when this action was commenced. Did the carrier have a "vested" right to the operation of the provisions of § 65–39, as it existed prior to the amendment? We think that the answer should be in the negative.

A retroactive statute cannot, of course, interfere with or divest vested rights. The great difficulty lies in the attempt to assign a precise meaning to the term "vested rights" as any attempt at a defi-

nition results only in a conflict in the decisions. Generally speaking, "vested rights" refer only to those rights which will be protected from legislative interference. There is no vested right in a particular remedy or procedure. Sutherland, Statutory Construction, § 2204, pp. 119–123.

As early as 1866 the Supreme Court discussed this question in Von Hoffman v. City of Quincy, 4 Wall. 535, 553, 18 L. Ed. 403, by saying:

> "It is competent for the states to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those which, under the form of modifying the remedy, impair substantial rights. Each case must be determined upon its own circumstances."

In Virginia the term "vested right" was considered by the court with respect to a statute extending the time of appeal to the Supreme Court of Appeals of Virginia. In Kennedy Coal Corporation v. Buckhorn Coal Corporation, 140 Va. 37, 124 S.E. 482, 484, the following appears:

> "Now, what is a vested right? Without reference to a dictionary definition we would define it as a right, so fixed, that it is not dependent on any future act, contingency, or decision to make it more secure. Tested by this definition, we are of the opinion that the appellees had no such vested right as is contemplated by the decisions relied on. The right of appellees at the time of the rendition of the judgment of the court contained in the decree was not fixed in the sense that it was settled. It was an inchoate right, which would become vested upon the happening of one of two events, viz., an affirmance of the decree of the trial court by the Supreme Court of Appeals, or by the expiration of the period allowed at the time in which to take an appeal."

Again in Allen v. Mottley Const. Co., 160 Va. 875, 170 S.E. 412, 417, the court draws a distinction between a "right, combination of right and remedy, and remedy alone," where an amendment to the statute reduced the time for filing a review of the Industrial Commission's rulings and the amendment was upheld. Cf. Floyd v. Miller, 190 Va. 303, 57 S.E. 2d 114.

Along the same lines we note Phipps v. Sutherland, 201 Va. 448, 111 S.E.2d 422, 425 relating to a change in keeping judgments alive. The court states:

> "The generally accepted rule is that statutes of limitation, or remedial statutes, are not retrospective in their application in the absence of clear legislative intent. However, it is the settled law of this State that the legislature may declare a new or an amended statute dealing solely with matters of remedy and procedure, or one not affecting vested interests and contractual rights, to have a retrospective operation. * * Vested interests and contractual rights may not be impaired or destroyed, but mere matters of procedure and remedy for their enforcement may be altered, curtailed or repealed at the will of the legislature so long as a reasonable opportunity and time are afforded to enforce and protect such interests and rights. * * *"

The Phipps case, supra, likewise discusses § 1–16 of the Code of Virginia 1950, relied upon by the carrier in the instant proceeding.

There are two authorities which are in apparent conflict on the retrospective application of an attorney's fee statute allowing a fee to the employee on appeal. Ahmed's Case, 278 Mass. 180, 179 N.E. 684, 79 A.L.R. 669, permits the retrospective application of the statute. Hardware Mutual Casualty Co. v. Carlton, 151 Fla. 238, 9 So.2d 359, holds to the contrary by saying that an injury constitutes a contract between the em-

ployee, the employer, and the insurance carrier, which contract cannot be substantially changed by the legislature. Although the retrospective feature in Ahmed was not present, North Carolina has held that the allowance of an attorney's fee is proper in a similar situation. Russell v. Western Oil Co., 206 N.C. 341, 174 S.E. 101. The theory in Ahmed and Russell, with a contrary view expressed in Carlton, is that the award of an attorney's fee is more in the nature of a penalty imposed upon the employer if he is unsuccessful on appeal; the object of the statute being to discourage appeals by employers and thereby insuring the employee a speedy award. The present case involves a statute which seeks to transfer the burden of attorney's fees to the party for whose benefit the recovery is obtained.

While the "right" to institute an action against a third party may accrue to the employer as of the date of the injury, the method and manner of obtaining such recovery constitutes only a procedural right or, at best, a right affecting merely a form of the remedy. For these reasons the 1960 amendment manifestly touched upon the rights of the carrier as to all cases pending when the amendment became effective. Whatever rights the carrier had prior to the 1960 amendment, they were not protected from legislative abrogation. The language of § 65–39.1 permits of no ambiguity and it is plain that it was intended to apply retroactively and prospectively as to all actions or claims for damages in which a recovery had not yet been effected, either by judgment or voluntary settlement. Allen v. Mottley Const. Co., supra.

While we believe that there is abundant authority to apply § 65–39.1 in an action under the Federal Tort Claims Act, it is apparent that there is a broad equitable discretion vested in district courts in allowing fees under 28 U.S.C.A. § 2678, which reads in part:

"The court rendering a judgment for the plaintiff pursuant to section 1346(b) of this title * * * may, as a part of such judgment, award, or settlement, determine and allow reasonable attorney fees * * * which * * * shall not exceed * * * 20 per centum of the amount recovered under section 1346(b) of this title, to be paid out of but not in addition to the amount of judgment * * * recovered, to the attorneys representing the claimant."

There appears to be no federal statute expressly prohibiting an injured employee from offsetting his attorney's fee from the claim of the subrogee in an action under the Federal Tort Claims Act. In other actions, such as those instituted by the injured employee, who has received the benefits of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., against a third party tortfeasor, it has been held that the compensation carrier is entitled to reimbursement without allocation of attorney's fees. Davis v. United States Lines Company, 3 Cir., 253 F.2d 262; Fontana v. Pennsylvania Railroad, D.C., 106 F.Supp. 461, affirmed 2 Cir., 205 F.2d 151, cert. den., Fontana v. Huron Stevedoring Corp., 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390.

In Aetna Casualty & Surety Co. v. United States, 2 Cir., 170 F.2d 469, 472, the carrier paid compensation to the injured employee for more than one year and, under New York law, the payment of compensation for as much as one year assigned the right to the carrier to bring an action against the negligent third party, if the employee had not sued in the interim. The carrier brought the action under the Federal Tort Claims Act and the United States argued that no such suit could be brought in the name of the subrogee. Under New York law, in the event of a recovery, the carrier was permitted to retain an amount equal to the compensation payments made, plus one-third of the net recovery, with the remaining two-thirds being distributed to the injured employee. In considering the discretion imposed upon the district court in the allowance of fees under the Federal Tort Claims Act, this is said:

"Since the Tort Claims Act gives the district court discretion to determine whether attorney's fees should be allowed to plaintiff's counsel, there is no danger of excessive fees being granted plaintiff's attorney. The district court, of course, may consider the fact that the state statute allows plaintiff a portion of the recovery to cover its expenses."

Thus it is clear that the state statute, while perhaps not controlling, furnishes a guide in the determination of any allocation of attorney's fees. There is admittedly a strong intimation to the effect that a one-third fee, as provided by New York law, will not be permitted in a Tort Claims Act case and, on this point, this court is in agreement. The United States Supreme Court affirmed the right of an insurance carrier to sue in its own name without discussing the fee question. United States v. Aetna Surety Co., 338 U. S. 366, 70 S.Ct. 207, 94 L.Ed. 171.

The equitable discretion in the district court touching upon the allowance of attorney's fees between the attorney for the insurer and the attorney for the injured party or decedent's estate in an action under the Tort Claims Act is best illustrated by Doherty v. Bress, 104 U.S. App.D.C. 308, 262 F.2d 20, cert. den. 359 U.S. 934, 79 S.Ct. 649, 3 L.Ed.2d 636, where the insurance carrier, as subrogee to the rights of the estate of a deceased passenger, brought an action under the Tort Claims Act following a mid-air collision of two airplanes over the Washington National Airport. To save time and expense of separate and multiple trials, the insurance carrier, together with other plaintiffs who sued both the United States and Eastern Air Lines, agreed that the decision in one case would be controlling. The final decision resulted in recoveries under the Virginia wrongful death statute which, at that time, was limited to $15,000.00. Subsequently Doherty, counsel for the insurance carrier, settled the claim of the carrier for $14,500.00 and was awarded counsel fees to the extent of $2900.00, the maximum allowable by the Federal Tort Claims Act.

Bress, having been the successful attorney in the test case, then petitioned the court to set aside the fee allowance and to allow to him a fee equal to the reasonable and fair value of his services, even though he had never been employed by the carrier. The court, stressing the agreement to rely upon the test case, allowed Bress seven per cent of the total settlement and decreased the award to Doherty by this amount. In so doing the court approved of the principles enunciated in Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184, and Washington Gas Light Co. v. Baker, 90 U.S.App.D.C. 98, 195 F.2d 29.

There are, and perhaps will be in the future, many cases under the Tort Claims Act in which the attorney for the insurance carrier may actively participate or cooperate in a successful effort to secure a recovery. In that event he would be co-counsel for the plaintiff and a division of fee under 28 U.S.C.A. § 2678 may well be appropriate, even to the extent of allowing counsel for the carrier the entire percentage of the fee with reference to the amount recovered for the benefit of the insurance carrier. The present controversy does not reflect such action on the part of the carrier. Adopting the Virginia statute, § 65–39.1 of the Code of Virginia 1950, as amended, the court will direct that counsel for the decedent's estate be paid 20% of the entire recovery, and the amount to be paid by way of reimbursement to the insurance carrier shall be subject to a like deduction in favor of counsel for the decedent's estate.

Adopting this memorandum in lieu of specific findings of fact and conclusions of law, counsel for the respective parties will prepare an appropriate judgment order which, as between the plaintiff and defendant, will be final, and as between the third-party plaintiff and third-party defendants, will be interlocutory. The order shall further direct the Clerk to forward a certified copy thereof to the General Accounting Office to protect the payment of interest in the event of an appeal.